**ALLEN et al., Appellants,**

**v.**

**CASPER et al., Appellees.**

[Cite as *Allen v. Casper* (1993), 87 Ohio App.3d 338.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 64383.

Decided April 26, 1993.

*Wesley A. Dumas, Sr.,* for appellants.

*Robert J. Foulds,* for appellees.

*Per Curiam.*

Plaintiffs-appellants James and Jane Allen (the "Allens") appeal the granting by the trial court of summary judgment filed by defendants-appellees L.J. Casper, statutory agent, Bethlehem Baptist Church, Michael Staub, and Reverend Edward Hlad. For the reasons adduced below, we affirm.

This cause of action arose as a result of incidents that occurred at Bethlehem Christian School during the fall term of the 1990–1991 school year. The school is a privately operated institution located at 27250 Emery Road, Orange Village, Ohio. Kristen Allen, age eight, and Chad Allen, age ten, the children of appellants James and Jane Allen, were enrolled as students at the school. Kristen was enrolled in the third grade and Chad was enrolled in the fifth grade. The children had not previously attended Bethlehem Christian. Their earlier schooling took place at Gracemont Elementary School, a public school in Cleveland, New Covenant Christian Academy, a private school in Bedford, and Stafford Elementary School, a public school in Maple Heights.

Prior to enrolling their children at Bethlehem Christian, the Allens filled out an application for enrollment. As part of the application process, the Allens were provided with a copy of the school's admission policies, which applied to parents as well as students.

Paragraph 3 of the Policies and Procedures states:

"The school reserves the right to refuse admittance, suspend, or expel any student who does not cooperate with policies established in this book. The high standard and Biblical principles that our school holds apply to after school hours

as well. *If any parent or student* refuses to follow those standards, then they place their privilege of attending B.C.S. in jeopardy."

Paragraph 7 states:

"Parents of students (as set forth on the application) must have received Jesus Christ as Savior and Lord. They must also be in agreement with our doctrinal statement, demonstrate a spirit of cooperation, and uphold the student handbook."

After their application was accepted, the Allens signed a parents' agreement and were sent a copy of the school handbook, which related to disciplinary procedures and parental involvement. As part of their parents' agreement, the Allens agreed as follows:

"We recognize that confidence in our child's teachers and school administration is essential. Therefore, we will encourage our child to respect and obey school policies and school officials. We agree that, if our child should become involved in any difficulty at school, we will not complain to other parents, but, with a prayerful Christian spirit, will register only necessary complaints with the appropriate teacher and/or administrator."

The school handbook, which relates to disciplinary procedures and parental involvement, provides in relevant part as follows:

"Grievances

"If a parent has a question or concern related to a classroom situation, he should first meet with the particular classroom teacher. If the matter is not resolved, the administrator is the proper person to contact. Thereafter, a conference with the parents, the teacher, and the administrator may be in order.

"If a parent feels that he cannot accept the decision or explanation given by the administrator, his final recourse is to take the matter before the school board, with the administrator and teacher present, by submitting a written request for such a meeting to the administrator."

A series of events involving Kristen Allen led to a dispute between the Allens and the school administrator as to how the matters should have been handled. As a result of the failure of the Allens and the school to come to any agreement, the school requested by letter dated November 27, 1990 that the Allens voluntarily withdraw their children. The letter stated that if the parents refused to voluntarily withdraw the children, then the school would officially dismiss them effective December 3, 1990. The parties do not dispute the events leading up to the children's dismissal. A summary of those events follows.

Sometime in September 1990, Kristen informed her mother that two male kindergarten children chased her on the playground and that one child pulled her

hands behind her back while the other pulled her dress up and ran his hand across her panties. The following day, Mrs. Allen telephoned Michael Staub, the school administrator, and informed him of the incident. Staub indicated that he would speak to the children concerning the matter. He also told her that if the incident occurred again, he would paddle the children in line with the school's policy of administering corporal punishment. Mrs. Allen did not ask for further information regarding this incident.

Staub spoke with the kindergartners involved, Terrence Morrison and Christopher Garrison, and asked them what they had done. After speaking with the boys, Staub was certain that the children, then age six, did not realize that they had done anything wrong. Staub told them that they should not touch children in the manner that they had touched Kristen and told them that if any such incident occurred in the future, he would paddle them.

In October, Kristen told her mother that one of the boys involved in the first incident touched her again in a similar way. The Allens went to the school the next day and met with Staub. When Staub was questioning Kristen about what had occurred, Mrs. Allen became angry and told Staub in a very loud voice that he was intimidating Kristen. Staub told the Allens that he would talk to the boy and get back with them. Mrs. Allen told Staub that she thought the boy should be physically punished and requested a meeting with the boy's parents.

Staub spoke with the young boy, who admitted that he had touched Kristen. Staub telephoned the boy's parents and arranged a meeting with them. He described the parents as very concerned and cooperative. With their consent, Staub paddled the boy.

According to Staub, Mrs. Allen became angry and demanded to know what he had done to the young boy. Staub assured her that he was taking care of the matter, but that it was the school's policy to discuss disciplinary matters only with the parents of the child involved. Unsatisfied with this response, the Allens met with Rev. Hlad, who had no responsibility for the day-to-day running of the school, to discuss the matter. At no time did the Allens seek a meeting with the school board as required by the school handbook.

At Rev. Hlad's urging, Staub informed Mrs. Allen of his handling of the matter. At that time, Staub claims that Mrs. Allen appeared to be satisfied.

In November, Mrs. Allen picked her children up from school and took them to a local restaurant. Kristen told her mother that a different young boy had spit upon her as the children were leaving school. Mrs. Allen drove back to the school and confronted the teacher Kristen had informed of the incident on the playground. The teacher, who had the boy in class the previous year, explained to Mrs. Allen that the boy had a dental malformation which caused him to spray

saliva and that the boy did not intentionally spit on Kristen. The teacher, nevertheless, asked Mrs. Allen if she wanted her to call the boy's parents. Mrs. Allen became angry and demanded to speak with Staub. According to Staub, Mrs. Allen was upset and angry at the teacher's handling of the incident and wanted to know what he was going to do about it. Staub told her he would speak with the child's parents. When Mrs. Allen telephoned him the following day to determine if he had contacted the parents, Staub told her that he had been unable to reach them. Mrs. Allen became angry and told Staub in a loud voice that there was no reason he could not reach the child's parents. Mrs. Allen called Staub unchristian and accused him of working with the devil.

At this point, Staub contacted Rev. Hlad, explained that he could reach no agreement with the Allens as to how matters involving Kristen should be handled, and felt that perhaps the withdrawal of the Allen children would be in the best interests of all parties involved. Staub then arranged a meeting with Rev. Hlad and the Allens. At this meeting, Rev. Hlad asked Mrs. Allen if she had called Staub unchristian and whether she had accused him of working with the devil. Mrs. Allen admitted that she had said these things to Staub. After further discussion, it seemed that the parties could develop no working relationship with the school administrator regarding matters involving their children, and Rev. Hlad asked the Allens to withdraw their children prior to December 3, 1990. The Allens were given a week to locate a new school and were told that their tuition would be refunded.

When the children appeared at school on December 3, 1990, Staub asked them if they would wait outside his office. He then telephoned Mr. Allen, who came to the school and picked up his children. The Allen children did not return to Bethlehem Christian School.

On November 27, 1991, the Allens filed suit against Bethlehem Baptist Church, Michael Staub and Rev. Hlad for unlawfully dismissing their children from Bethlehem Baptist Christian School.

With leave of court, appellees filed their motion for summary judgment, along with supporting evidentiary materials, on July 12, 1992. On August 21, 1992, the Allens filed their brief in opposition to plaintiff's motion for summary judgment, along with supporting evidentiary materials. On August 25, 1992, the trial court granted appellee's motion for summary judgment.

The Allens timely appealed raising the following sole assignment of error:

"The lower court erred in granting defendant's motion for summary judgment where it is clear that factual differences existed on issue as to whether or not the dismissal of the plaintiff children from private school was arbitrary and capricious."

Ohio Civ.R. 56(C) governs the disposition of a motion for summary judgment. Civ.R. 56(C) provides as follows:

"Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  * * * A summary judgment shall be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.  * * * "

Civ.R. 56(C) was intended to promote judicial economy by eliminating needless trials in circumstances where there are no genuine issues of material fact.  The conclusion that no genuine issue of material fact exists for consideration follows from the determination, based upon a review of the limited materials which Civ.R. 56(C) permits to be considered, that reasonable minds could come to only one conclusion and that conclusion is against the party opposing the motion. Although the nonmoving party is entitled to have the submitted evidentiary materials construed in the light that most favors the party, the party cannot merely rest upon the pleadings when the motion has been made, but must endeavor to demonstrate to the court that genuine issues for trial truly exist. *State ex rel. Celebrezze v. Tele–Communications, Inc.* (1991), 62 Ohio Misc.2d 446, 601 N.E.2d 260; *Sheets v. Rockwell Internatl. Corp.* (1990), 68 Ohio App.3d 345, 588 N.E.2d 271.

Taking the foregoing principles together, it can be said that the proper scope of inquiry under Civ.R. 56 requires the answering of two essential questions:  First, is there any genuine issue as to any material fact?  Second, if there is no genuine issue of fact, then viewing the evidence and the inferences which may be drawn therefrom in the light most favorable to the adverse party, is the movant entitled to prevail as a matter of law?

Utilizing the above considerations, this court is of the view that the trial court was correct in finding that the undisputed material facts entitle defendants to judgment as a matter of law.  The rationale for this conclusion is as follows:

There is no question that the relationship between the parties here is a contractual one, that the terms of that relationship may be expressed in school policies and handbooks, and that those expressed terms may govern the circumstances under which a student may be expelled.  *Runyon v. McCrary* (1976), 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415; *Schoppelrei v. Franklin Univ.* (1967), 11

Ohio App.2d 60, 40 O.O.2d 228, 228 N.E.2d 334; *Geraci v. St. Xavier High School* (App.1978), 13 O.O.3d 146. Because contracts for private education have unique qualities, they are to be construed in a manner which leaves the school board broad discretion to meet its educational and doctrinal responsibilities. Absent a clear abuse of discretion by the school in the enforcement of its policies and regulations, courts will not interfere in these matters. *Schoppelrei, supra,* 11 Ohio App.2d at 62, 40 O.O.2d at 229, 228 N.E.2d at 336.

Thus, in order to state an actionable claim in these circumstances, the plaintiff must adduce evidence of a violated contractual right or evidence that the school clearly abused its discretion in enforcing its policies and regulations. *Schoppelrei, supra; Koblitz v. W. Reserve Univ.* (1901), 21 Ohio C.C. 144, 11 Ohio C.D. 515.

In the present matter, the Allens have failed to adduce any evidence of a violated contractual right. They have also failed to present any facts to show a clear abuse of discretion on the part of Bethlehem Christian School, Michael Staub or Rev. Hlad.

On the contrary, the evidence suggests that the appellees acted within their proper discretion in removing the Allen children. The record demonstrates that Michael Staub, who was responsible for the day-to-day running of the school, responded promptly to the complaints by Mrs. Allen in a manner that he believed would yield fairness to all parties involved. The Allens refused to agree to his disposition of the matters, bypassed the grievance procedures, engaged in confrontational tactics and failed to abide by the school handbook. After Mrs. Allen called Staub unchristian and accused him of working with the devil, Staub felt that he could not work together with the Allens and that the best interest of all parties would be served by the removal of the children from the school. That the Allens understood that their children could be removed from Bethlehem Christian School based upon their failure to comply with the admission policies and the terms of the school handbook is not disputed.

Accordingly, the Allens' sole assignment of error is not well taken and is overruled.

*Judgment affirmed.*

NAHRA, P.J., MATIA and NUGENT, JJ., concur.