IWENOFU et al., Appellants,

v.

ST. LUKE SCHOOL et al., Appellees.

[Cite as *Iwenofu v. St. Luke School* (1999), 132 Ohio App.3d 119.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 73355.

Decided Feb. 16, 1999.

122

*Teamor, Lichko & Brown, Richardo B. Teamor* and *Christel D. Best–Musick,* for appellants.

*Quandt, Giffels & Buck, Beth A. Sebaugh* and *David L. Herron;* and *Edward J. Maher,* for appellees.

KARPINSKI, Presiding Judge.

Plaintiffs-appellants, Anthony and Antonia Iwenofu and their son, Ted Iwenofu, appeal from the judgment of the trial court that granted summary judgment to defendants, St. Luke School and Sister Mary Kozak, as well as from the judgment of the trial court that dismissed plaintiffs' complaint against defendant Cleveland Catholic Diocese. On appeal, plaintiffs raise seven assignments of error, six challenging the judgment in favor of St. Luke School and Sister Kozak and one challenging the judgment in favor of the diocese. For the reasons that follow, we find no merit to these arguments and affirm the judgment of the trial court.

Plaintiff, Ted Iwenofu, an eighth-grade student at St. Luke, was disciplined for engaging in behavior involving inappropriate touching of girls at St. Luke. Ted challenged the actions taken by St. Luke and the subsequent juvenile court proceedings brought against Ted by the diocese. After complaints surfaced against him, the school suspended Ted for three days and told him he could return only if he received counseling. Ted's parents declined this option and removed Ted from the school. Approximately one year later, the diocese filed a complaint in juvenile court. That action was resolved in favor of Ted.

In the case at bar, Ted and his parents argue that he was treated unfairly by St. Luke. They contend that the school and Sister Kozak overly and unfairly punished Ted for his pubescent indiscretions, whereas Ted's complaints of being maligned by other students went unheeded. Specifically, the complaint alleges, that (1) the school breached its contract with plaintiffs because the school did not follow its handbook in handling this matter, (2) Ted's constitutional rights were violated because he was not afforded due process in the discipline process, and (3) the school committed various torts against Ted, including defamation, invasion of privacy, and negligence. Additionally, plaintiffs allege that the diocese's instituting juvenile court proceedings amounted to malicious criminal prosecution. The relevant facts follow.

Ted was a student at St. Luke from 1993 to 1995. Materials submitted by St. Luke and Sister Kozak present a series of complaints both by and against Ted, initially, of pushing and shoving. Because of these complaints, Sister Kozak, on five occasions prior to May 1995, suggested to Ted's parents that he receive counseling.

The culmination of these complaints came on May 5, 1995, when three girls came to Sister Kozak's office to complain about Ted's treatment of them as well as of other students. Sister Kozak called in those other students and asked them to write down their observations concerning Ted's behavior. These written statements, attached as exhibit H to St. Luke's motion for summary judgment,

describe various instances in which Ted squeezed girls' breasts or buttocks or made sexual comments or jokes. After she received these statements, Sister Kozak suspended Ted. During this suspension, Sister Kozak obtained additional statements from other students concerning Ted's behavior. Boys, for example, indicated that Ted grabbed their genital area.

In his deposition, Ted admitted to these actions. Specifically, he admitted that he had touched the breasts or buttocks of four girls. Ted described his contact with one girl in particular, as follows:

"A. It was in the front center of her breast.

"Q. Around the nipple area?

"A. Yes.

"Q. Okay, And how did you do that, if you can describe it?

"A. It was like two seconds, like two seconds I just was like that and released my hand (indicating).

"Q. Okay. So you're showing that you closed your hand?

"A. Exactly.

"Q. And then subsequently released it?

"A. Exactly.

"Q. And when you closed you hand, you closed it at least on some occasions around her breast?

"A. Yes."

He similarly described squeezing this girl's buttocks. In her deposition, the girl stated that on each occasion she told him to stop. Ted also admitted grabbing another girl's buttocks. Neither of these girls consented to this touching. He explained that he engaged in this behavior to be funny and make friends. On May 11, 1995, after a three-day suspension, Sister Kozak informed Ted's parents that if he did not receive counseling,[1] he could not remain at St. Luke. At this point, Ted's parents removed him from the school.

Plaintiffs paint a different picture of the events. Plaintiffs describe a school where the students "were like most other pubescent youth and actively engaged in sexual and non-sexual wordplay, horseplay, teasing and pranking." Furthermore, plaintiffs cite various occasions when students taunted and teased Ted. Specifically, Ted states that on one occasion, he was kicked and tied up on the

---

1. On five previous occasions, the parents had ignored Sister Kozak's advice that Ted receive counseling. See plaintiffs' answers to defendants' interrogatories.

playground, and when he complained of this treatment, little or no action was taken by the school.

Plaintiffs removed Ted from St. Luke in May 1995. On January 16, 1996, they filed a lawsuit against St. Luke and Sister Kozak. On April 25, 1996, the diocese initiated the filing of a complaint against Ted for juvenile delinquency in juvenile court. The complaint alleged nineteen counts regarding actions that would constitute gross sexual imposition if committed by an adult. After hearing the evidence, the juvenile court judge dismissed all nineteen counts. Thereafter, plaintiffs amended their complaint in common pleas court to add a cause of action against the diocese for malicious prosecution.

The trial court granted both the diocese's motion to dismiss and St. Luke's motion for summary judgment. Plaintiffs timely appeal, raising seven assignments of error, the first of which states:

"I. The trial court erred in granting summary judgment as to appellants' breach of contract claim when it held that appellees' school handbook was not a part of the educational contract and that appellee Sr. Kozak's actions were in accord with this handbook's policies."

In this assignment, plaintiffs challenge the trial court's grant of summary judgment in favor of St. Luke School and Sister Kozak regarding plaintiffs' complaint that the school's disciplinary actions were in breach of the school's handbook. To succeed on this breach-of-contract claim, plaintiffs must prove both that Sister Kozak's actions violated the handbook and that the handbook created contractual rights between the parties. As explained below, we find that the investigation and discipline of Ted were consistent with the school handbook. Thus we need not address the issue whether the handbook constituted a contract.

St. Luke's applicable Sexual Harassment and Sexual Violence Policy states as follows:

"Purpose

"St. Luke School is firmly committed to providing a safe, positive learning and working environment for everyone in the school. For this reason, and in keeping with the goals and objectives of Catholic education, St. Luke School expressly prohibits sexual harassment and sexual violence in the school environment. This policy reemphasizes the personal dignity of the individual and fosters positive sexual attitudes and respect for others.

"Sexual Harassment

"For the purpose of this policy, sexual harassment includes the following specific instances: verbal sexual abuse; disseminating obscene or sexually explicit material, whether in the form of music, written lyrics, pornographic pictures or

other literature, or having such material in one's possession in the school, on school grounds or at school-sponsored activities; obscene or sexually explicit graffiti anywhere in the school or on the school/parish grounds; continuing and unwanted written or oral communication directed to another of a sexual nature; spreading sexual rumors, innuendos; obscene T-shirts, hats, or buttons; touching oneself sexually in front of others; obscene and/or sexually explicit gestures; and any other inappropriate behavior of a sexually explicit or obscene nature that demeans or offends the recipient. The above list is not meant to be all-inclusive, but is intended to provide guidance as to what may constitute sexual harassment.

"Isolated, trivial incidents are not sufficient to constitute harassment and will be handled according to the student behavior code.

"Allegations of sexual harassment (as defined above) are to be reported to the teacher and the principal. Parents of both the offender and the victim will be informed of the allegation. The matter is to be kept confidential by all parties involved, and every effort will be made to protect the alleged victim from retaliation. The parents of both the offender and the victim are obligated to cooperate in remedying the situation.

"If the allegations are substantiated, disciplinary actions will be taken. *These will depend on the nature, frequency and severity of the action, the ages of the offender and victim, the history of similar actions by this individual, and the circumstances in which the harassment occurred. Possible disciplinary actions may include but are not limited to any or all of the following:*

"*–verbal warning/reprimand and apology to the victim,*

"*–a parent/student/principal conference,*

"*–a written warning/reprimand & parent notification, entered in the student's file,*

"*–detention or removal from selected school activities and/or extracurricular activities,*

"*–behavior/probation contracts, possibly requiring professional intervention,*

"*–suspension,*

"*–explusion.*

"Sexual Violence

"Sexual violence is handled separately because of its potentially criminal nature. If an accident of sexual violence occurs, the principal, pastor, or other school authority is required under state law to report the incident (O.R.C. 2151.421). The Department of Human Services and the police will be contacted immediately if there is any 'reason to believe' (O.R.C. 2151.421) that sexual abuse

or violence has occurred involving a child less than eighteen years of age. The Diocesan Legal Office will be contacted immediately in these situations.

*"Generally sexual harassment should be construed as sexual violence when: the recipient is physically touched without his/her consent in a sexual manner;* is expressly threatened or perceives a threat of physical harm for purposes of the offender's sexual gratification; *or* is the victim of sex offenses under Ohio law, including Gross Sexual Imposition (O.R.C. 2907.05), Sexual Battery (O.R.C. 2907.03), Rape (O.R.C. 2907.02), Importuning (O.R.C. 2907.07), Voyeurism (O.R.C. 2907.08), Public Indecency (O.R.C. 2907.09), or Felonious Sexual Penetration (O.R.C. 2907.12) as examples. In each one of the above examples, the Department of Human Services and the police will be contacted immediately." (Emphasis added.)

Ted has admitted to touching the breasts and buttocks of two girls without their consent. Other students also described additional instances when Ted made sexually explicit comments and gestures. These actions would be sufficient under a number of the handbook's nonexclusive list of examples of sexual harassment: verbal sexual abuse, continued unwanted sexual oral communication, innuendos, touching oneself sexually in front of others, sexually explicit gestures, and any other inappropriate behavior of a sexually explicit nature.

██ In addition, his actions fall under the handbook's definition of sexual violence: touching students without their consent in a sexual manner. Plaintiffs misread the policy when they assert that to constitute sexual violence the policy requires, in addition, that there be sexual gratification on the part of the aggressor, as well as a threat, either perceived or actual, of physical harm to the victim. By the word "or" the policy clearly provides three disjunctive definitions, any one of which would define sexual violence.

Moreover, the actions taken by the school—conferences with parents, repeatedly advising that he receive counseling, suspending him, and finally requiring counseling—were all consistent with the disciplinary options available to the school. The last step the school took—making counseling a condition for his return to St. Luke—clearly fell under the disciplinary action described as "behavior/probation contracts, possibly requiring professional intervention." Furthermore, under the Sexual Harassment Section of the handbook, the disciplinary actions available to the school "are not limited to any or all" of those listed.

██ Plaintiffs claim, however, that when the matter was referred to the Human Services Department and the police, the school did not follow the procedures in the handbook. This referral, plaintiffs claim, is evidence that Ted was improperly disciplined according to the policy on sexual violence rather than

on sexual harassment. This argument rests on a false either-or premise. Ted's actions could be classified under both the sexual-harassment and sexual-violence policies as the handbook defines these terms. Thus in response to the complaints and evidence of misconduct, the school could properly take action under both the sexual-harassment and sexual-violence policies. Under the sexual-violence portion of the handbook, the school was required to report incidents to the authorities if there was any "reason to believe" that the recipient was touched without her consent in a sexual manner. Given the complaints of the girls and the corroborating statements of other students, the school clearly had such reason.

■ Finally, plaintiffs claim that their contract with the school was breached when appellees failed to turn over requested records that allegedly documented the basis for disciplining Ted. In their one-paragraph discussion of this claim, plaintiffs failed to specify what section of the handbook [2] requires this discovery. Nor have plaintiffs explained any other basis for asserting this prelitigation right. We therefore reject this claim, pursuant to App.R. 16.

■ Under Ohio law, a private school such as St. Luke is vested with broad discretion in the manner in which it disciplines its students:

"Private schools have broad discretion in making rules and setting up procedures to enforce those rules. See *Schoppelrei v. Franklin Univ.* (1967), 11 Ohio App.2d 60, 62, 40 O.O.2d 228, 229, 228 N.E.2d 334, 336. Contracts for private education have unique qualities and must be construed to allow the institution's governing body to meet its educational and doctrinal responsibilities. *Allen v. Casper* (1993), 87 Ohio App.3d 338, 345 [344], 622 N.E.2d 367, 371 (appellate court affirmed summary judgment in favor of school where school expelled two students based on parents' failure to comply with admission policies and terms of the school handbook). It is 'well established that courts will not interfere in these matters in the absence of a *clear abuse of discretion* by the governing board.' (Emphasis added.) *Schoppelrei, supra,* 11 Ohio App.2d at 62, 40 O.O.2d at 229, 228 N.E.2d at 336." *Ray v. Wilmington College* (1995), 106 Ohio App.3d 707, 711–712, 667 N.E.2d 39, 42.

In *Allen, supra,* this court applied this principle to a private elementary school.

■ St. Luke's actions of investigating the serious allegations and incrementally addressing the issue (first by conferring with the parents and repeatedly suggesting counseling, next by suspending him, and finally by requiring counseling) were all within the broad discretion afforded to St. Luke School. Because we have found that defendant acted consistently with those handbook policies, we

---

2. We note that the record includes only parts of the handbook.

need not address the question whether this manual constitutes a contract. Accordingly, this assignment of error is overruled.

"II. The trial court erred in granting judgment as to appellants' negligence claim when it held that appellants failed to show that appellee Sr. Kozak breached her duty to appellant."

Plaintiffs argue that the trial court erred when it granted defendants summary judgment on plaintiffs' claim that Sister Kozak negligently failed to enforce the handbook's code of conduct and administer discipline to the other students in response to Ted's complaints of mistreatment. In response to this argument, the trial court stated:

"Based upon the evidence submitted by the parties, it is clear to the Court that the Plaintiffs are unable to provide a factual basis for asserting the existence of any breach of duty. For instance, the affidavit of Ted Iwenofu merely states in conclusory fashion that 'I repeatedly asked Sr. Kozak for help and she did little to help me; sometimes she did nothing at all.' (See Thadeus Iwenofu's Affidavit, paragraph 10.) Upon review of the record it is clear that there is no evidence proffered by the Plaintiffs which details any specific incident in which Sister Kozak failed to act when she was duty bound to do so. Furthermore, it is not contested that Sr. Kozak did in fact respond to Ted's complaint by addressing Ted's entire class regarding the pattern of pushing and shoving involving Ted and a number of classmates.

"The plaintiffs seem to be suggesting that since the other boys who were involved in the pushing were not punished as severely as Ted (i.e. were not expelled or told to go to counseling) Sr. Kozak must have been derelict in her duty to administer punishment. This argument is baseless, however, when one considers the fact that Ted was not suspended for pushing, but for touching female students in an inappropriate fashion. Indeed this Court has failed to find any evidence that any other male student touched female students in this manner. Thus, there is no indication that Ted was treated any differently by Sr. Kozak than any other male student at St. Luke or that Ted was suspended for pushing, etc., while other students went unpunished for similar acts."

We agree with Judge Boyko's comprehensive thirteen-page analysis of the facts. Because we find no evidence in the record to support plaintiffs' claim that the principal failed to act when duty required that she respond to Ted's complaints, we affirm. Indeed, we observe that on six occasions, Sister Kozak urged Ted's parents to seek counseling for him. Sister Kozak repeatedly responded on the basis of her analysis of the problem. Underlying plaintiffs' complaint is not Sister Kozak's failure to take action against the other students but her analysis of the situation—an analysis that found Ted equally at fault in

the actions he complained of. When Ted first complained, Sister Kozak was concerned that the other boys were picking on him as a new boy in the school. She learned, however, that "it was a mutual pushing and shoving. He was instigating it as much as the other boys were instigating it."

Plaintiffs offer no evidence to prove that her analysis was negligently incompetent. When she investigated, she learned that he was involved in the very behavior he complained of, that is, pushing and shoving.[3] Ted admitted to her that "he was also right in the thick of this pushing and shoving." When she checked Ted's history at his prior school, moreover, she learned that counseling had previously been suggested when he was in the fifth grade. Her journal further indicates, "—[S]ame behavior at St. Rose—doing some pushing, shoving—he is not innocent." This prior history could reasonably serve to confirm her analysis of Ted's current complaint. Thus she had good reason to treat Ted's complaint as she did.

▪ Plaintiffs complain that Sister Kozak ignored page 29 of the handbook in failing to report Ted's allegations to his parents, as well as to the other students' parents. The page plaintiffs cite is entitled "Sexual Harassment and Sexual Violence Policy." Ted's complaints, however, were about shoving and pushing and being tied up. From what is legible in the excerpted ledger provided, we find no instance of Ted complaining of sexual harassment or sexual violence. Ted admitted, moreover, that he did not report any sexual touching, at least on two occasions that he was later questioned about. It is the burden of plaintiffs to provide evidence that Ted made complaints to Sister Kozak that would trigger this policy. As noted by the trial court, plaintiffs offer no evidence of any specific instances of sexual misconduct against Ted that were ignored by Sister Kozak.[4]

Finally, plaintiffs specify one incident when Sister Kozak allegedly failed to act after she learned that a group of classmates had tied Ted to a basketball pole with their ties. The record demonstrates otherwise. According to her ledger, Sister Kozak punished the entire group by forcing them to keep their ties on during recess. No one specifically denies that she took this action—which was quite creative in punishing the children with the very instrument they had wrongfully used.

▪ In their appellate brief, plaintiffs cite page 4 of Sister Kozak's ledger in support of their claim that she repeatedly ignored Ted's reports of the other

---

3. The parents' inability to remember Ted's problems at St. Rose provided Sister Kozak with additional reason to give less weight to their analysis of Ted's behavior and look elsewhere for explanations.

4. Again, we note the record does not contain the complete ledger reporting the complaints. Nor does the affidavit of Ted's mother provide this evidence.

students failing to respect him and that such misconduct required a verbal warning for the first offense. Attached to their brief in opposition to the motion for summary judgment is an incomplete photo copy of Sister Kozak's ledger. First, we must note that the pages provided from the ledger were not renumbered, and the original pagination is not always legible. Thus it is not clear what page is cited here in support. There is an entry on November 11, 1993, in which Sister Kozak writes that she planned to talk to some boys the next day in response to a complaint by Ted, but the journal entry does not specify the complaint. The appendix that provides the ledger skips from a page of entries on November 12, 1993 to a new page for May 17, 1995 and then back to November 22, 1993. Because we cannot be certain all the entries for November 12, 1993 were provided, it is not clear, therefore, whether she talked to the boys the next day. When the original pagination is legible, it is clear that numerous pages at crucial points of time have been omitted. Many parts of the entries, moreover, are often illegible.[5] Thus it is impossible to state from this jumble of ledger excerpts what Sister Kozak knew or what she did or did not do regarding specific complaints.

A similar deficiency occurs in another of appellants' arguments. On the one hand, plaintiffs criticize Sister Kozak for failing to investigate complaints Ted brought. On the other hand, they also complain that when Sister Kozak investigated a complaint by going to the students and asking them to write down what had occurred, she used a procedure not contained in the handbook as a "disciplinary violation procedure." In support, appellants' brief cites pages 23 and 24 of the handbook. However, they do not provide page 23 from the handbook; and page 24, which is provided, says nothing about the form the investigation should take. Plaintiff's failure to properly locate evidence is a major flaw in their claim of a breach of duty.

Finally, we note that plaintiffs have not cited any case law holding that a student can maintain a cause of action in negligence because a school administrator failed to punish other students in an equal manner. Accordingly, the second assignment of error is overruled.

"III. The trial court erred in granting summary judgment as to appellants' negligent training claim in that the evidence shows that appellee St. Luke School did not train appellee Sr. Kozak to adhere to the specific procedures in the school handbook."

---

5. In those parts of the deposition in the record, neither party took the opportunity to resolve this problem by having Sister Kozak clearly read the ledger in a deposition.

■ In this assignment, plaintiffs argue that the trial court erred by granting summary judgment on their claim of negligent training of Sister Kozak. This argument fails because, as we explained in the first assignment, Sister Kozak did not misapply the handbook. Moreover, we observe that Sister Kozak had twenty-four years of experience as a teacher, a master's degree in education, and one year of experience as an assistant principal. As a general principle, such extensive preparation does not describe a principal negligently undertrained. Moreover, nothing in the handbook is so technical that the school could not assume that a person with Sister Kozak's formal education and experience could understand it. Accordingly, plaintiffs' third assignment is overruled.

"IV. The trial court erred in granting summary judgment as to appellants' respondeat superior claim because the evidence shows that appellee Sr. Kozak committed a wrongful act against Ted during the scope of her employment with St. Luke School."

In this assignment, plaintiffs argue that the trial court erred in granting summary judgment to St. Luke on plaintiffs' *respondeat superior* claim. This assignment fails because, as mentioned in our discussion of the first two assignments, we have determined that there were no wrongful acts committed by Sister Kozak; therefore, plaintiffs cannot sustain a *respondeat superior* claim against St. Luke. Accordingly, the fourth assignment of error is overruled.

"V. The trial court erred in granting summary judgment as to appellants' defamation claim because the evidence shows that appellant Ted did not commit any sexually violent act, such that the affirmative defense of truth is not applicable to this claim."

■ In this assignment plaintiffs challenge the trial court's ruling on plaintiffs' defamation claim. Plaintiffs argue that the publication of Ted's alleged touching of female students to the class, to the police, and to Human Services was defamatory. This argument fails.

■ The first requirement for establishing a claim of defamation is a false statement. *Akron–Canton Waste Oil, Inc. v. Safety–Kleen Oil Serv., Inc.* (1992), 81 Ohio App.3d 591, 611 N.E.2d 955. Plaintiffs have failed to present any evidence of a false statement defendants made about Ted. Ted himself admitted that he touched the female students in the manner the school described in its statements to the class and to the authorities. Accordingly, because plaintiffs have failed to point to any false statement defendants made, plaintiffs' claim of defamation must fail.

"VI. The trial court erred in granting summary judgment as to appellants' invasion of privacy claim because appellant Ted had a reasonable expectation of

privacy in the investigation since the school handbook dictates that such investigations will be conducted confidentially."

In this assignment plaintiffs argue that the trial court erred by granting summary judgment to defendants on plaintiffs' invasion-of-privacy claim. Specifically, plaintiffs argue that their privacy was invaded when Sister Kozak went to the class to investigate Ted's misconduct.

Ohio recognized the tort of invasion of privacy in *Housh v. Peth* (1956), 165 Ohio St. 35, 59 O.O. 60, 133 N.E.2d 340. Paragraph two of the syllabus in *Housh* states:

"An actionable invasion of the right of privacy is the unwarranted appropriation of exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." See, also, *Rothstein v. Montefiore Home* (1996), 116 Ohio App.3d 775, 689 N.E.2d 108.

In the case at bar, plaintiffs cannot establish an actionable invasion-of-privacy claim, because this information was a matter of concern to the school and already known to numerous students. There is no liability when the defendant "merely gives further publicity to information about the plaintiff that is already public." *Killilea v. Sears Roebuck & Co.* (1985), 27 Ohio App.3d 163, 167, 27 OBR 196, 199, 499 N.E.2d 1291, 1294. Moreover, Sister Kozak went to the students merely to ask them about Ted's behavior. This investigation was appropriate, indeed necessary, because three students themselves had initiated the complaints and numerous others were either alleged victims or witnesses or both. Indeed it is incongruous for Ted, who admitted to touching the girls in front of the other students, to complain about the investigation extending to these same students. Moreover, once the principal was put on notice that Ted's actions were not limited to merely one or two persons, it was her duty to determine the extent of that activity. Finally, plaintiffs fail to explain how his privacy would be protected if Sister Kozak had investigated the matter by calling each student to her office separately. To adequately investigate the matter, she still had to speak to each student. Accordingly, the sixth assignment of error is overruled.

"VII. The trial court erred in dismissing appellants' claims of malicious criminal prosecution and abuse of process against Catholic Diocese because these juvenile proceedings were criminal in nature, and appellants successfully alleged the necessary elements for both claims."

Finally, plaintiffs argue that the trial court erred by dismissing their claim for malicious criminal prosecution.

 Under Ohio law, there is a difference between malicious criminal prosecution and malicious civil prosecution. The Ohio Supreme Court recently reaffirmed the four elements necessary for malicious civil prosecution: (1) malicious institution of prior proceedings against the plaintiff by defendant, (2) lack of probable cause for the filing of the prior lawsuit, (3) termination of the prior proceedings in the plaintiff's favor, and (4) seizure of plaintiff's person or property during the prior proceedings. *Robb v. Chagrin Lagoons Yacht Club* (1996), 75 Ohio St.3d 264, 662 N.E.2d 9, syllabus. Malicious civil prosecution differs from malicious criminal prosecution in that the latter does not contain the fourth element, seizure of the person or property. In the case at bar, it is undisputed that plaintiffs did not plead any seizure of plaintiff's person or body. Because juvenile court proceedings are civil rather that criminal, plaintiffs' cause of action for malicious prosecution thus was properly dismissed. See, also, *Richard Roe v. Franklin Cty.* (1996), 109 Ohio App.3d 772, 673 N.E.2d 172 (claim of malicious civil prosecution fails for lack of seizure of person stemming from proceedings in juvenile court). Accordingly, the seventh assignment of error is overruled.

*Judgment affirmed.*

JAMES D. SWEENEY, J., concurs.

TIMOTHY E. McMONAGLE, J., concurs in judgment only.