JOURNAL ENTRY AND OPINION
Plaintiffs Sean P. Riley, a minor, and his parents Patrick J. and Sue Ann Riley, appeal from an order granting summary judgment in favor of defendants St. Ann Catholic School and the Catholic Diocese of Cleveland (collectively referred to as St. Ann's) on the Rileys' various breach of contract, defamation, and misconduct claims which they aver stem from Sean's allegedly wrongful expulsion from the school. For the reasons that follow, we affirm.
The record discloses the following facts. St. Ann Catholic School is a privately owned and operated elementary school in Cleveland Heights, Ohio. In October 1998, during his eighth-grade year, Sean sold his broken BB gun to a fellow St. Ann's student named Paul[1] while the two visited in the backyard of Sean's home. Sometime in mid-December 1998, Paul brought the broken gun to the school for the alleged purpose of selling it to another student. Paul and Sean went to Sean's home for the purported purpose of repairing the gun. While Sean had permission from his parents to leave the school grounds at the lunch hour, Paul did not have permission from his parents. During the lunch hour, Sean removed the CO2 cannister and discarded it. After inspecting the barrel, Sean concluded that he could not repair it and returned the gun to Paul. When the two returned to the school, another student named Joseph expressed his interest in the gun and, after the two inquired, Sean valued the broken gun at $20 to $25. Joseph apparently bought the gun.[2]
During the morning of December 16, 1998, Sister Anne McGreevy, principal of St. Ann's, learned that the mother of another student named Peter had reported to the school's athletic director that, on the previous evening, Joseph allegedly had threatened Peter with the BB gun. Sister McGreevy immediately began investigating the allegations and separately interviewed the three students she determined to be involved in the incident: (1) Peter, the student allegedly threatened with the gun; (2) Paul, the student she concluded possessed the gun; and (3) Joseph, the student who allegedly threatened Peter with the gun. During her discussions she learned that Paul had obtained the gun from Sean.
When Sister McGreevy questioned Sean about the gun, he claimed he gave the gun to Paul because it was broken and denied having sold it to him. After further discussions with Paul, Joseph, Peter, and their respective parents, Sister McGreevy concluded that Sean was much more involved with the gun then he previously had admitted. In a second interview, Sean again denied selling the gun. Then, on December 28, 1998, Sister McGreevy, Father James Singler, the pastor of St. Ann Parish, and the Diocesan attorney met with the Rileys to discuss the events surrounding the gun incident. Sean eventually admitted selling the gun for $17 and a social studies outline that he later turned in as his own work.
By letter dated December 29, 1998, Sister McGreevy and Father Singler notified the parents of Paul, Joseph, and Sean that they would have an opportunity to withdraw from school by January 6, 1999, before their names were officially removed from the roster by expulsion. The reason stated for the expulsion was the violation of the Diocese's zero tolerance weapons policy. Unlike Paul and Joseph, Sean did not withdraw by January 6.
On January 15, 1999, Father Singler and Sister McGreevy issued the following letter to the parents of all students attending St. Ann School:
Dear Parents,
 This letter is to advise you of an incident that occurred on December 15, 1998. A weapon was brought into the school on this day for the purpose of being fixed and sold.
 As a Catholic parish school, St. Ann adheres to the diocesan policy of zero tolerance for weapons on school property. After detailed investigation and deliberation with our Diocesan Council, our decision was reached. The boys involved in this incident are no longer in attendance at Saint Ann School.
On January 22, 1999, the Rileys filed their verified complaint and motion for temporary restraining order. In the first two counts of the verified complaint, the Rileys averred that the act of expelling Sean was arbitrary and capricious since it was not based upon the student handbook or express diocesan policy and, as such, constituted a breach of both express, contractual terms of the student handbook and terms of an implied educational contract. They also claimed that the action violated basic notions of due process. In count three, the Rileys alleged that school officials intentionally and negligently took actions to expel Sean, knowing both that their actions constituted a breach of the contract between the parties and that these officials abused their discretion by failing to provide them with procedural due process. In count four, the Rileys claimed the January 15, 1999 letter to the parents defamed Sean. The court set a hearing on the motion for January 26, 1999, but the record does not include an order disposing of the motion.
In August 1999, St. Ann's filed its motion for summary judgment upon leave granted, arguing that the undisputed facts entitled it to judgment as a matter of law. In pertinent part, St. Ann's argued that the Family Handbook did not create an express contract between the parties. It also argued that, because it complied with the terms of the Family Handbook, it did not abuse its discretion when it expelled Sean. With regard to the misconduct claims, it argued both that the Rileys failed to identify the duty it owed to Sean and that it enforced its policies within its broad discretion. Finally, it pointed out that the defamation claim must fail because the Rileys failed to prove that the January 15, 1999 contained false statements about Sean.
The Rileys filed their brief in opposition and separate supporting affidavits, seeking to show the existence of a genuine issue of material fact. Sister Dorothy Ann Krolikowski, th principal of St. Ann's for the five years preceding Sister McGreevy, averred that the youth gangs policy[3] contained in the Family Handbook was not intended to be a statement of any weapons policy of the School and that the school never formally adopted thee`zero tolerance' Diocesan weapons policy referenced in the December 29, 1999 expulsion letter (Emphasis in original). In addition, Patrick Riley averred that he understood the December 28, 1998 meeting to relate to the actions of the other students, not Sean, and that he would not have appeared at the meeting without his lawyer had he known Sean would have been expelled. Based upon his own experience as a seasoned private school administrator, he believed that Sean's actions did not warrant expulsion. He also asserted that defense counsel's statements led him to believe that St. Ann's expelled Sean because he is Caucasian.
In a sixteen-page opinion and order journalized on May 11, 2000, the court concluded that the school officials' act of expelling Sean was consistent with the policies set forth in the student handbook and did not amount to an abuse of discretion. With regard to the negligent and intentional misconduct claims, the court concluded that the Rileys failed to establish a factual basis for asserting the existence of any breach of duty or intentional act undertaken to upset, harm, or injure them. Ruling on Motion for Summary Judgment, vol. 2462, p. 153, at pp. 164-165. The court also concluded that the defamation claim must fail because the Rileys could not show that the January 15, 1999 letter contained a false statement of fact. The court granted St. Ann's motion for summary judgment and dismissed the complaint with prejudice. From this order, the Rileys filed a timely appeal.
The Rileys raise two assignments of error:
 I. THE TRIAL COURT ERRED/ABUSED ITS DISCRETION IN FAILING TO CONSIDER, ADDRESS AND/OR DISCUSS, IN ITS RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, THE AFFIDAVITS OF PATRICK RILEY AND SISTER KROLOWSKI [sic]. THOSE AFFIDAVITS WERE SUBMITTED WITH PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND CLEARLY CREATE DISPUTED ISSUES OF MATERIAL FACT REQUIRING/MANDATING THAT THIS CASE TO GO TO A JURY UNDER DRESHER v. BURT (1996), 75 OHIO ST.3d 280, 662 N.E.2d 264, AND ITS PROGENY.
 II. THE TRIAL COURT IMPROPERLY UPHELD SEAN RILEY'S EXPULSION UPON BASES NOT RELIED UPON BY THE SCHOOL ITSELF IN THE FIRST INSTANCE.
In their first assignment of error, the Rileys contend that the affidavits of Sister Krolikowski and Patrick Riley created a question of fact regarding the existence of a contractual relationship between the parties and regarding whether the school officials abused their discretion when enforcing its policies and regulations. According to the Rileys, neither they nor Sister Krolikowski were aware of the existence of a zero tolerance policy. They additionally argue that, had Sean brought an Uzi or live hand grenade to school rather than possessed a non-operational BB gun off campus, the basic disciplinary protocol for those students involved in gang activities would have afforded Sean the opportunity to remain in school and, thus, St. Ann's denied him contractual due process rights by expelling him. The Rileys also contend that the school officials abused their discretion by lumping Sean's act of selling the gun at his home with the incidents in which Paul and Joseph were involved, since Sean had no knowledge of or control over Paul's and Joseph's actions. Finally, the Rileys claim that the school officials abused their discretion in defaming Sean through the January 15, 1999 letter to all of the students' parents.
In response, St. Ann's argues that the handbook does not constitute an enforceable contract but, if this court concludes to the contrary, the disciplinary actions taken against Sean complied with the policies and procedures contained in the handbook. It also argues that the Rileys have failed to identify the false statement allegedly contained in the January 15, 1999 letter.
This court reviews the grant of summary judgments de novo. See Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35, 506 N.E.2d 212. In Zivich v. Mentor Soccer Club (1998), 82 Ohio St.3d 367, 369-370,696 N.E.2d 201, the Ohio Supreme Court restated the appropriate test for summary judgment as follows:
 Pursuant to Civ.R. 56[,] summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Dresher v. Burt (1996) 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264, 273-274.
Contract and Misconduct Claims
The terms of the contractual relationship between a student or the student's parents and a private educational institution may be expressed in school polices and handbooks that govern the circumstances under which the school may expel a student. Allen v. Casper(1993), 87 Ohio App.3d 338,343, 622 N.E.2d 367; see Iwenofu v. St. Luke School (1999),132 Ohio App.3d 119, 128, 724 N.E.2d 511; Ray v. Wilmington College (1995), 106 Ohio App.3d 707, 712, 667 N.E.2d 39. Because contracts for private education have unique qualities, a court should construe them in a manner that leaves the school board broad discretion to meet its educational and doctrinal responsibilities. Id. at 344; accord Iwenofu, supra; Ray, supra. In order for a student to state an actionable claim for his or her expulsion from a private school, the student must adduce evidence of a violated contractual right or evidence that the school clearly abused its discretion in enforcing its policies and regulations. Allen, supra at 344.
As part of the private educational contract, a student or his parents agree that the student's conduct and character shall be such as to in no manner be a detriment to the school ; that this conduct and character he must bear in all his relations with the school and with the other students ; that he will conform to the customs of the school ; and that, if he fails in any of the duties devolving upon him, the authorities over the school may discipline him in such manner as shall be proper under the circumstances. Koblitz v. The Western Reserve Univ. (1901), 21 Ohio C.C. 144, 154. The private school then agrees that it will impart to him instruction ; that it will treat him fairly ; that it will not impose upon him penalties which he in no wise merits ; and that it will deal with him impartially. Id. at 155.
As Allen suggests, a private school handbook may constitute part of the educational contract. Regardless, [c]ompliance with scholastic standards and disciplinary requirements are enforced within a broad range of discretion * * * [and] courts will not interfere in these matters in the absence of a clear abuse of discretion by the governing board. Schoppelrei v. Franklin Univ. (1967), 11 Ohio App.2d 60, 62,228 N.E.2d 334. The clear abuse of discretion standard implies a lack of evenhanded justice in the administration of the [private school's] regulations, id., where there has been unnecessary oppression and unfair dealing, or where there has been an expulsion that violates the purposes of the [private educational contract], Koblitz, supra at 158. Given the foregoing, it appears that the courts will only intervene on behalf of the student in the following limited cases: (1) where the evidence on its face and without consideration of the purpose of the private educational contract shows that the private school clearly violated the terms of that contract; or (2) where the private school clearly abuses its discretion in applying its disciplinary standards in such a manner as to depart from the purpose of the educational contract and rise to the level of a breach of that contract. The Rileys do not take issue with the educational contract itself,[4] and they have not asked this court to interpret the disciplinary standards based upon contract principles. Rather, the Rileys' arguments focus on the second aspect outlined above, i.e., the discretionary application of disciplinary standards contained in the Family Handbook. In this regard, the Rileys' express and implied contract and intentional and negligent misconduct claims are essentially the same.[5]
The portion of the St. Ann Catholic Elementary School Family Handbook (July 1997), attached to its brief in support of its motion for summary judgment, states that the school's primary purpose is to help students lead lives according to the Gospel of Jesus Christ and the teachings of the Catholic Church. It is committed to each child's total education: in spirit, in body, in mind, in morals and faith, in emotions, and in social interaction. Another partial edition of an undated Family Handbook, attached to the verified complaint, reflects the school's purpose and philosophy in various behavioral norms required by the school. It notes that St. Ann students are characterized by * * * respect for the right of the classroom teacher and classmates to an atmosphere that is conducive to teaching and learning, honesty in speech and in school work, * * * [and] adherence to all school policy rules and regulations[.]
A different partial copy of the Family Handbook, attached to the Rileys' complaint, sets forth various disciplinary levels, including a teacher/parent communication report, probation, suspension, and expulsion. With regard to expulsion, both handbooks state the following:
 When in the judgment of the pastor and principal there is danger to other students, physical or moral, and when behavior is such that it is not possible to maintain an atmosphere conducive to learning, students will be asked to withdraw. Explulsion [sic] will only be used as a last resort.
 *Because it is impossible to foresee all problems which arise, this clause empowers faculty and administration to take disciplinary action of any behavior which violates the spirit and philosophy of St. Ann School, even though not specified in these behavior norms.
The Rileys presuppose that, because the court did not mention the affidavits of Sister Krolikowski and Patrick Riley in its opinion, it did not consider them in its decision. Had it done so, they essentially contend, the court would have found a question of material fact with regard to their claims. We disagree.
Sister Krolikowski's affidavit relates solely to the inapplicability of the youth gang prohibition. Even if Sean's involvement with the other students did not rise to gang activity as defined in the Family Handbook, see supra note 4, Sean provided independent reasons for disciplinary action when he violated at least three specific behavioral norms. First, after having lied at least twice to Sister McGreevy, Sean finally admitted that he sold the gun to Paul in exchange for $17 and a social studies outline. These lies violated the honesty in speech behavioral norm. Second, he also admitted to the act of turning in, as his own, the social studies outline to his teacher. This act of cheating violated the honesty in school work behavioral norm. Third, Sean facilitated Paul's violation of the school rules when he failed to ascertain whether Paul had express parental permission to leave the school grounds at the lunch hour. These acts provide a basis independent of the gun incident and gang activity prohibition for disciplinary action against Sean. The affidavit of Sister Krolikowski, therefore, does not create a question of fact with regard to whether the school officials clearly abused their discretion in expelling Sean for his actions.
The affidavit of Patrick Riley, on the other hand, relates to his opinion on the manner in which Sean was disciplined. The affidavit, however, contains nothing more than his opinion as a private school educator that Sean's actions off campus did not warrant expulsion. Nothing in the affidavit explains why the choice of disciplinary action presents a lack of evenhanded justice in the administration of the regulations contained in St. Ann's Family Handbook, nor does it explain why the expulsion violates the purposes of the private educational contract. In addition, because Sean's actions provided reasons for expulsion independent of the gun incident, the comparative severity of the disciplinary action for all students involved also does not raise a genuine issue of material fact. As such, we cannot conclude that Patrick Riley's affidavit creates a question of fact regarding whether the school officials clearly abused their discretion in expelling Sean. Defamation
The first element of a defamation claim is a false statement. Akron-Canton Waste Oil, Inc. v. Safety-Kleen Oil Serv., Inc. (1992),81 Ohio App.3d 591, 611 N.E.2d 955. The affidavits do not identify the alleged false statement contained within the January 15, 1999 letter addressed to St. Ann students' parents and, therefore, they fail to create a question of material fact with regard to Sean's defamation claim. Based upon the foregoing discussion, the first assignment of error is overruled.
In their second assignment of error, the Rileys contend that the trial court improperly upheld Sean's expulsion upon an independent basis rather than limit its review to the purported reason relied upon by the school itself, i.e., the diocesan zero tolerance weapons policy. We note that the Rileys cite no authority in support of this proposition nor did they take issue with the evidence supplied by St. Ann's in support of its summary judgment motion.
While a written opinion explaining the disposition of a summary judgment motion is helpful to a reviewing court, the circumstances here did not obligate the trial court to provide the parties with such an opinion. Regardless of whether the trial court supplies such an opinion, this court's review of the grant of a motion for summary judgment is de novo. Thus, we must affirm a trial court when it provides erroneous reasons but, when considered in light of alternative, legally correct grounds, nevertheless reaches the right result. See, e.g., Page v. Riley (1999), 85 Ohio St.3d 621, 624, 710 N.E.2d 690. Even if we concluded that the court erred in granting summary judgment for the reasons stated in its opinion, the Rileys do not claim that a question of fact exists with regard to Sean's actions which, as we concluded above, provided a basis for expulsion. The second assignment of error is overruled.
It is ordered that appellees recover of appellants their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA A. BLACKMON, J. and ANNE L. KILBANE, J., CONCUR.
[1] We refer to Sean's classmates by fictitious first names only.
[2] Joseph's version of events differs. He averred that Paul had told him he brought the gun to school so Sean could fix it and that Sean had told him he had, indeed, fixed the gun.
[3] The 1997 Family Handbook mentioned infra prohibits both youth gangs and gang-related activities. It defines a gang as any non-school sponsored group, usually secret and/or exclusive in membership, whose purpose or practices include unlawful or anti-social behavior or any action that threatens the welfare of others. Gang activities include * * * possession of weapons or explosive materials * * * and the student may be suspended or expelled for his or her participation in such activity.
[4] At oral argument, counsel admitted the existence of an educational contract, which we note is not part of the record.
[5] Cf. Iwenofu, 132 Ohio App.3d at 128 (after concluding that the private school acted in conformity with its handbook polices, a plurality of this court concluded it need not consider whether the manual constituted a contract).