DECISION AND JOURNAL ENTRY
Gail Lamar appeals from the judgment of the Lorain County Court of Common Pleas, which granted summary judgment in favor of defendant A. J. Rose Manufacturing Company. This court reverses.
 I.
Ms. Lamar was hired by A. J. Rose Manufacturing Company ("Rose") on May 15, 1995. Ms. Lamar originally worked in Rose's Cleveland factory but in August 1995, she was transferred to Rose's newly opened Avon factory. Ms. Lamar was hired as a machine operator and was still employed by Rose when this appeal was filed. Ms. Lamar's immediate supervisor was Mr. Boodheshwar Phalgoo, who was a seventeen-year employee at Rose. Ms. Lamar was warned by co-workers in Cleveland to "watch her back" once she started at Avon, because Mr. Phalgoo was a difficult supervisor.
Shortly after her transfer to Avon, Ms. Lamar observed Mr. Phalgoo engaging in what Ms. Lamar considered to be offensive behavior of a sexual nature. From September 1995 to May 1996, Ms. Lamar allegedly experienced sexual harassment by Mr. Phalgoo, including inappropriate sexual remarks to and concerning Ms. Lamar and other females, inappropriate sexual touching of his own genital area in her presence, touching Ms. Lamar's breasts, and looking down Ms. Lamar's shirt. Based on the warnings of coworkers in Cleveland and Mr. Phalgoo's alleged power to control overtime assignments, Ms. Lamar was cautious about discussing Mr. Phalgoo's behavior with coworkers, union officials, or management.
Although Rose had a sexual harassment policy, a copy of which allegedly was posted at the Cleveland plant, various employees were not even aware of the policy and were not aware that the policy was posted at Avon until another employee registered sexual harassment complaints in May 1996. Ms. Lamar testified that she did not know that Rose had a sexual harassment policy that prohibited such behavior and provided process for reporting such allegations to Mark Warnkey, vice president of administration. Additionally, Ms. Lamar did not feel that she could report the uncorroborated incidents, because union officers advised her that management's position was not to investigate allegations unless there were witnesses to the alleged incidents. Because of the arrangement of the machinery and materials in the Avon plant, work stations were often out of sight of co-workers who were stationed only a short distance away.
Billy Jones who became union grievance officer late in 1995 corroborated Ms. Lamar's understanding of the situation as to reporting harassment. Mr. Jones testified about a December 6, 1995 meeting at the Avon plant concerning Mr. Phalgoo's supervision of a work area where most of the female production workers were stationed. Jim Griffith, the human resource manager for Rose, attended the meeting with Mr. Jones, Ms. Lamar and other female workers, and Mr. Phalgoo. Ms. Lamar stated that she was told at Cleveland that if the female workers did not "put out" sexually for Mr. Phalgoo, they would risk losing assignment of overtime hours. She then asked Mr. Phalgoo if "he would use their hours as punishment." Rebecca Gallaunt, a Rose employee who ultimately filed sexual harassment claims against Mr. Phalgoo and Rose, made a comment that if she had bigger breasts, she would be treated differently. Mr. Jones testified that although Mr. Phalgoo usually was unaffected by employee complaints, Mr. Phalgoo reacted very angrily to Ms. Gallaunt's comment, "like somebody had hit a nerve." After the meeting Mr. Jones told Mr. Griffith that "I thought it was something that should get resolved." However, Mr. Jones testified that generally at the time of the events in question, Rose was "not responsive in many regards to the [union] grievance process." Thus, although, Mr. Jones had personally observed Mr. Phalgoo make sexually derogatory comments about female employees, he had received the impression from Jim Griffith that, unless he could produce several witnesses of alleged sexual harassment complaints, Mr. Jones should not bother to file a grievance. Mr. Jones testified that he did not know about the Rose sexual harassment procedure until May 1996. Under these circumstances, although Ms. Lamar and another female employee had advised Mr. Jones of sexual harassment by February 1996, Mr. Jones did not file a grievance on behalf of the employees because he could not produce "smoking gun" evidence.
In May 1996, Ms. Gallaunt alleged that Mr. Phalgoo had sexually harassed her. She registered her complaint directly with Rose management, in accordance with the sexual harassment policy. Rose investigated Ms. Gallaunt's allegations. As part of the investigation, Mr. Griffith interviewed Rose employees and he contacted Ms. Lamar who was on sick leave awaiting surgery. Ms. Lamar advised Mr. Griffith in a May 25, 1996 letter that she had similar complaints about Mr. Phalgoo, but that she wanted to wait until after recovering from her surgery to discuss the allegations in depth. The letter further alleged that Mr. Phalgoo made sexually inappropriate remarks, touched himself in an inappropriate sexual manner, and touched Ms. Lamar inappropriately.
After the investigation, Rose put Mr. Phalgoo on a two-week unpaid leave of absence and ordered him to attend sexual harassment training. Its "Disciplinary Action Notice" to Mr. Phalgoo, dated June 13, 1996, which was appended as an exhibit to the affidavit of Mark Warnkey, stated that "it is the Company's belief that you have engaged in actions which * * * violated its harassment policy." Also attached to the affidavit is a copy of the company's undated "Harassment Policy." Although it proscribes harassment "based on a person's race, sex, religion, national origin, age or handicap," the bulk of the provisions contained therein specifically address sexual harassment. After the two-week leave of absence, Mr. Phalgoo was allowed to return to Avon as a supervisor. Rose did not advise the complainants whether the company had substantiated the sexual harassment allegations. At some time in 1997, Mr. Phalgoo was transferred to Cleveland, although he would occasionally visit the Avon plant unescorted. Ms. Lamar found herself alone in Mr. Phalgoo's presence during these unannounced visits, and reported that she was intimidated by Mr. Phalgoo's glare.
Ultimately, Rebecca Gallaunt filed claims against Rose and Mr. Phalgoo in federal district court in Cleveland, and numerous Rose employees were deposed in the course of that action. On December 4, 1997, Ms. Lamar filed suit in the instant case against both Rose and Mr. Phalgoo. Her claims against Rose were for sexual discrimination involving a hostile work environment, invasion of privacy, retaliation, negligent infliction of emotional distress, intentional infliction of emotional distress, negligent retention, negligence and gross negligence. Ms. Lamar's claims against Mr. Phalgoo involved sexual harassment in violation of R.C. Chapter 4112, retaliation, invasion of privacy, negligent infliction of emotional distress, intentional infliction of emotional distress, negligence and gross negligence.
Mr. Phalgoo filed a motion to dismiss on the basis that Ms. Lamar could not sue him in his individual capacity. On July 15, 1998, the court granted the dismissal with prejudice. After the filing of depositions, Rose filed a motion for summary judgment, which the court granted on March 5, 1999. Ms. Lamar filed the instant appeal, assigning five errors concerning the grant of summary judgment in favor of Rose. Ms. Lamar only challenges the trial court's ruling as to some of her claims.[1]
 II. FIRST ASSIGNMENT OF ERROR The trial court erred by granting the Motion [for] Summary Judgment on appellant's claim for hostile work environment sexual harassment.
 To prevail on a summary judgment motion, the moving party "bears the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case." (Emphasis sic.) Dresher v. Burt (1996), 75 Ohio St.3d 280, 292. To accomplish this, the movant must be able to point out to the trial court "evidentiary materials [that] show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Id. at 293. If such evidence is produced, the non-moving party must proffer evidence that some issue of material fact remains for the trial court to resolve. Id.
An appellate court reviews an award of summary judgment de novo and, like the trial court, must view the facts in the case in the light most favorable to the non-moving party. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105. Any doubt must be resolved in favor of the non-moving party. Viock v. Stowe-Woodward Co. (1983), 13 Ohio App.3d 7,12.
Where the non-moving party would have the burden of proving all of a number of elements in order to prevail at trial, the moving party in the summary judgment motion may point to evidence that the non-moving party cannot possibly prevail on an essential element of the claim. See e.g.,Stivison v. Goodyear Tire Rubber Co. (1997), 80 Ohio St.3d 498,499-500. If the moving party meets this burden of proof, the burden then shifts to the non-moving party to show that there is a genuine issue of material fact as to that element. Dresher, 75 Ohio St.3d at 293.
In Ohio, "federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000(e) et seq., Title 42, U.S. Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112."Plumbers Steamfitters Commt. v. Ohio Civil Rights Comm. (1981),66 Ohio St.2d 192, 196, citing State ex rel. Republic Steel v. Ohio CivilRights Comm. (1975), 44 Ohio St.2d 178 and Weiner v. Cuyahoga CommunityCollege Dist. (1969), 19 Ohio St.2d 35.
Sexual harassment can take either of two forms: (1) hostile work environment, or (2) quid pro quo harassment in which the harassment is linked to the grant or denial of tangible economic benefits. Hampel v.Food Ingredients Specialties, Inc. (2000), 89 Ohio St.3d 169, paragraph one of the syllabus. In order to prevail upon a hostile environment sexual harassment claim, a petitioner must show that: (1) the harassment was unwelcome; (2) the harassment was based on sex; (3) the harassment was sufficiently severe or pervasive to affect the terms or conditions of employment; and (4) either the harassment was done by a supervisor, or the employer knew or should have known about the harassment and failed to take immediate appropriate corrective action. Id., at paragraph two of the syllabus.
Rose asserted that it was entitled to judgment as a matter of law on the hostile environment claim on the basis of the affirmative defense outlined in Burlington Industries, Inc. v. Ellereth (1998), 524 U.S. 742, 141 L.Ed.2d 633. Burlington held that when an employer fails to take "tangible employment action" to deal with harassment by a supervisor against an employee, the employer may still present an affirmative defense to liability by showing both
 that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and * * * that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.
 Burlington, 524 U.S. at 765, 141 L.Ed.2d at 655.
Rose pointed to Ms. Lamar's admitted failure to report the sexual harassment allegations to Rose directly, as provided for in the company's posted sexual harassment policy, or through the union grievance process. Rose pointed to the affidavit of Mark Warnkey, stating that a copy of Rose's sexual harassment policy was posted "at the Avon plant when it opened." Mr. Warnkey averred that prior to the May 1996 investigation of Gallaunt's sexual harassment allegations, Ms. Lamar never advised either the company or the union representatives of her own harassment complaints. Mr. Warnkey stated that "prior to [May 1996], Rose had no knowledge or reason to believe that Gallaunt or Lamar was allegedly being subjected to sexual harassment." Mr. Warnkey's affidavit also stated that once Rose heard of Ms. Gallaunt's and Ms. Lamar's complaints, it suspended Mr. Phalgoo for two weeks and ultimately transferred him to the Cleveland plant. Mr. Warnkey stated that from the time of the May 1996 investigation until the time the instant lawsuit commenced, Ms. Lamar never complained of any further harassment by Mr. Phalgoo. Mr. Warnkey averred that no prior sexual harassment allegations had been made against Mr. Phalgoo in the seventeen years he worked for Rose. Mr. Warnkey also said that once Ms. Gallaunt alleged sexual harassment, the company undertook an investigation and disciplined Mr. Phalgoo.
Consequently, Rose argued that it could not be held responsible for sexual harassment which Ms. Lamar never brought to its attention, and which the company had no reason to suspect was occurring. According to Rose there was no period during which the company knew or should have known of the harassment and failed to take corrective action.
This court finds that Rose failed to meet its initial Dresher burden. Rose was required to demonstrate that there was no genuine issue of material fact (1) that Rose exercised reasonable care in preventing and correcting the harassing behavior, and (2) that Ms. Lamar unreasonably failed to file a sexual harassment claim pursuant to the company's sexual harassment procedure or file a grievance through the union. SeeBurlington, 524 U.S. at 765, 141 L.Ed.2d at 655. As to the first prong of Burlington, Rose did point out Mr. Phalgoo's long employment history without incident of sexual harassment claims, and Rose's corrective action following Ms. Gallaunt's charges. However, Rose did not show that there was no genuine issue of material fact that Ms. Lamar's failure to report the harassment was unreasonable.
The depositions filed with the trial court included the testimony of several Rose employees that they were not even aware that Rose had a sexual harassment policy until after Ms. Gallaunt's claims arose in May 1996. Furthermore, several witnesses testified that they understood it to be the policy of Rose management to investigate claims of harassment only if there were witnesses who could corroborate the incidents. Even the union grievance officer was under the impression that he needed to have "smoking gun" evidence if he wanted to bring the allegations of harassment to Rose's management. Under these circumstances, viewing the facts in the light most favorable to Ms. Lamar, a finder of fact could reasonably conclude that it was reasonable for Ms. Lamar not to report the allegations of harassment.
Viewing the facts in the light most favorable to Ms. Lamar: Mr. Phalgoo sexually harassed her from September 1995 to May 1996; Mr. Phalgoo's harassing behavior was known to Rose employees; Rose management knew or should have known of the behavior; Rose took no corrective action for nine months; and Ms. Lamar did not report the harassment because Rose management failed to substantially comply with its own sexual harassment policy. Because there were genuine issues of material fact as to Rose's claimed affirmative defense, Rose was not entitled to judgment as a matter of law. The trial court erred in granting summary judgment.
Ms. Lamar's first assignment of error is sustained.
 III. SECOND ASSIGNMENT OF ERROR The trial court erred by granting the summary judgment motion on appellant's claim for invasion of privacy.
 It appears that Ms. Lamar's claim for invasion of privacy is based on Mr. Phalgoo's sexual harassment and the alleged failure of Rose to maintain confidentiality regarding Ms. Lamar's allegations.
The Supreme Court of Ohio has recognized invasion of privacy claims involving "the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." Housh v.Peth (1956), 165 Ohio St. 35, paragraph two of the syllabus. Both prongs of Ms. Lamar's invasion of privacy claim come within the purview of theHoush holding.
In its motion for summary judgment, Rose focused on the issue of Rose's alleged publication of Ms. Lamar's confidential report of the details of her harassment allegations. Ms. Lamar claimed that co-workers discussed these details subsequent to Rose's investigation. Rose pointed to Mr. Warnkey's affidavit statement that all employees who were interviewed during the investigation were admonished to keep the matters discussed in the investigation confidential. Rose further pointed out that Ms. Lamar has never stated which employees discussed the confidential information.
Viewing the facts in the light most favorable to Ms. Lamar, co-workers did discuss confidential matters contained in her sexual harassment complaint filed with Rose.[2] However, Rose established that if employees discussed confidential matters, they did so in breach of Rose's admonition to maintain confidentiality. Rose met its Dresher burden on this issue, which shifted the burden of production to Ms. Lamar show that there was a genuine issue of material fact as to Rose's publication of the confidential information. Ms. Lamar did not respond on this point.
Rose never addressed the other invasion of privacy issue, namely whether Rose could be held liable for invasion of privacy based on Mr. Phalgoo's sexual harassment which was a physical intrusion of Ms. Lamar's person. Because Rose failed to meet its burden of demonstrating that it was entitled to judgment as a matter of law on this claim, the trial court erred in granting summary judgment on this claim.
Ms. Lamar's second assignment of error is sustained as to the physical intrusion invasion of privacy claim but it is overruled as to the publication invasion of privacy claim.
 IV. THIRD ASSIGNMENT OF ERROR The trial court erred by granting the summary judgment motion on appellant's claim for intentional infliction of emotional distress.
 In moving for summary judgment on the claim of intentional infliction of emotional distress, Rose pointed to the elements to be proved for an intentional infliction of emotional distress claim, which are:
 1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; 2) that the actor's conduct was so extreme and outrageous as to go "beyond all possible bounds of decency" and was such that it can be considered as "utterly intolerable in a civilized community[;]" 3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and 4) that the mental anguish suffered by plaintiff is serious and of a nature that "no reasonable man could be expected to endure it."
 (Citations omitted.) Pyle v. Pyle (1983), 11 Ohio App.3d 31, 34. Rose argued that (1) the company did not know and should not have known of the harassing behavior due to Ms. Lamar's failure to report it; (2) assuming that Rose breached a duty in regard to the first element, its own inaction did not reach the level of outrageous behavior; and (3) even assuming proximate cause, (4) Ms. Lamar did not suffer unbearable mental anguish as a result.
Rose stated that Ms. Lamar "has never produced significant evidence that she suffered from such severe emotional distress" as is required under Ohio law to prevail on this claim. Rose further stated that "Plaintiff purposefully concealed any claims of harassment from Rose." However, Rose offered no evidentiary support for this statement. We have already determined that there were genuine issues of material fact about Rose's constructive notice of, and remedial action regarding, the harassment. Rose's summary assertion that Ms. Lamar has not produced evidence of her emotional distress does not meet Rose's burden of demonstrating that there was no genuine issue of material fact on this element, pursuant to Dresher. Until Rose met its Dresher burden, Ms. Lamar had no burden of production. The trial court erred in granting summary judgment on the intentional infliction of emotional distress.
Ms. Lamar's third assignment of error is sustained.
 V. FOURTH ASSIGNMENT OF ERROR The trial court erred by granting the summary judgment motion on appellant's claim of negligent retention of the employee.
 "A successful claim for negligent hiring or retention must establish the following elements: (1) the existence of an employment relationship, (2) the employee's incompetence, (3) the employer's actual or constructive knowledge of such incompetence, (4) the employer's act or omission causing plaintiff's injuries, and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries." Peterson v. Buckeye Steel Casings (1999), 133 Ohio App.3d 715, 729, citing Evans v. Ohio State Univ. (1996), 112 Ohio App.3d 724, 739.
Rose moved for summary judgment on the claim of negligent hiring. In its motion for summary judgment, Rose stated that there was no evidence that Mr. Phalgoo had a criminal record and Rose pointed to the Warnkey affidavit stating that Mr. Phalgoo had worked for Rose for seventeen years without any complaints being made about his behavior. On this basis, Rose argued that its hiring of Mr. Phalgoo was not negligent. Rose did not offer any evidence that it was not negligent in retaining Mr. Phalgoo after the harassment charges were made.
On the basis of the evidence cited during the discussion on the sexual harassment claim, viewed in the light most favorable to Ms. Lamar, there was a genuine issue of material fact as to Rose's actual or constructive knowledge of Mr. Phalgoo's sexually offensive behavior, both before and after the May 1996 investigation. Deposition testimony established that Mr. Phalgoo engaged in frequent sexually offensive behavior prior to the disciplinary action. Furthermore, there is a genuine issue of material fact concerning the appropriateness of Rose's employment action toward Mr. Phalgoo, who continued to work at Avon for approximately eighteen months after he was disciplined. Mr. Jones testified that he witnessed Mr. Phalgoo glaring at Ms. Lamar in an offensive manner even after the disciplinary action. Consequently, Rose was not entitled to summary judgment on the claim of negligent retention. Ms. Lamar's fourth assignment of error is sustained.
 VI. FIFTH ASSIGNMENT OF ERROR The trial court erred by granting the summary judgment motion on appellant's claims for gross negligence and negligence.
 Rose's motion for summary judgment on the claims of negligence and gross negligence stated that "Plaintiff fails to even meet the minimum pleading requirements on these claims." Rose pointed out that Ms. Lamar failed to state the duty of care that Rose allegedly breached.
However, in order to prevail on summary judgment, Rose was obliged to demonstrate that it was entitled to judgment as a matter of law. This Rose failed to do. In order to prevail, Rose was required to do more than establish that Ms. Lamar's negligence claims were inartfully pled. See Border City S. L. Assn. v. Moan (1984), 15 Ohio St.3d 65, 66 ("it does not render appellant's complaint fatally defective and subject to dismissal that each element of its cause of action was not set forth in the complaint with crystalline specificity"). Even on a motion to dismiss, "a complaint which does not contain direct allegations on every material point of the legal theory used to sustain a recovery will nevertheless be deemed sufficient if it contains `allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.'" Baker v. Conlan (1990), 66 Ohio App.3d 454,459, quoting Fancher v. Fancher (1982), 8 Ohio App.3d 79, 83.
Ms. Lamar's fifth assignment of error is sustained.
 VII.
This court affirms the grant of summary judgment on the publication invasion of privacy claim. However, we reverse the grant of summary judgment on the claims of sexual harassment, intentional infliction of emotional distress, negligent retention, physical intrusion invasion of privacy, negligence and gross negligence. We remand the cause to the trial court for further proceedings consistent with this decision.
Judgment affirmed in part, reversed in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to both parties equally.
Exceptions.
[1] Ms. Lamar has not appealed the grant of summary judgment on the claims against Rose for quid pro quo harassment, retaliation, negligent infliction of emotional distress, or the trial court's dismissal of the claims against Mr. Phalgoo.
[2] It is not clear from the record before this court that the information was not already in the workplace. Mr. Jones and Mrs. Lamar had numerous conversations with other workers about the allegations prior to the filing of Ms. Lamar's sexual harassment complaint pursuant to Rose's sexual harassment procedure. Where information about the plaintiff is already known to a number of other persons, a claim for invasion of privacy will not lie. "There is no liability when the defendant `merely gives further publicity to information about the plaintiff that is already public.'" Iwenofu v. St. Luke School (1999),132 Ohio App.3d 119, 133, quoting Killilea v. Sears, Roebuck Co. (1985), 27 Ohio App.3d 163, 167.