RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0005p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

JAY S. GUNASEKERA,

    *Plaintiff-Appellant,*

  *v.*

DENNIS IRWIN and KATHY KRENDL,

    *Defendants-Appellees.*

No. 07-4303

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 06-00732—Algenon L. Marbley, District Judge.

Argued: September 19, 2008

Decided and Filed: January 8, 2009

Before: MOORE and COOK, Circuit Judges; HOOD, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** John S. Marshall, MARSHALL & MORROW LLC, Columbus, Ohio, for
Appellant. Andrew J. Mollica, MOLLICA, GALL, SLOAN & SILLERY CO., L.P.A.,
Athens, Ohio, for Appellees. **ON BRIEF:** John S. Marshall, MARSHALL &
MORROW LLC, Columbus, Ohio, Louis A. Jacobs, Desert Hot Springs, California, for
Appellant. Andrew J. Mollica, MOLLICA, GALL, SLOAN & SILLERY CO., L.P.A.,
Athens, Ohio, for Appellees.

_____

**OPINION**

_____

  KAREN NELSON MOORE, Circuit Judge. Jay S. Gunasekera ("Gunasekera")

appeals the District Court's grant of dismissal under Federal Rule of Civil Procedure

---

[*]The Honorable Joseph M. Hood, United States District Judge for the Eastern District of
Kentucky, sitting by designation.

12(b)(6) to Dennis Irwin and Kathy Krendl ("Irwin" and "Krendl"), of his 42 U.S.C. § 1983 claims that Irwin and Krendl deprived him of his property and liberty in violation of the Due Process Clause of the Fourteenth Amendment. U.S. Const. amend. XIV, § 1, cl. 3. On appeal, Gunasekera argues that this dismissal should be reversed because: (1) the name-clearing hearing he was offered was not public and was therefore inadequate; (2) he has a property interest in his Graduate Faculty status and was denied notice and an opportunity to be heard when that status was suspended; and (3) any determination of whether his constitutional rights were clearly established to defeat the defendants' qualified immunity defense must wait until a factual record has been developed.

We hold that Gunasekera has made an adequate allegation that he was not offered a sufficient name-clearing hearing to protect his liberty interest and that he was deprived of his property interest in his Graduate Faculty status without the required notice and opportunity to be heard to withstand dismissal pursuant to Rule 12(b)(6). Accordingly, we **REVERSE** the district court's judgment granting the dismissal of Gunasekera's property-based claims. We **REVERSE** the district court's judgment that Gunasekera was not entitled to a public name-clearing hearing and **REMAND** for further proceedings consistent with this opinion. We **AFFIRM** the district court's judgment granting the dismissal of Gunasekera's liberty-based claims seeking civil damages because we conclude that Irwin and Krendl have qualified immunity with respect to these liberty-based damages claims.

## I. BACKGROUND

In 2004, Gunasekera was the Moss Professor of Mechanical Engineering at the Russ College of Engineering and Technology of Ohio University ("Russ College") and had been Chair of the Department of Mechanical Engineering for fifteen years. He had worked at Ohio University ("the University") for more than two decades and had Graduate Faculty status at Russ College which enabled him to supervise graduate students' thesis work. That year, a student alleged widespread plagiarism in mechanical-engineering graduate-student theses. Two internal investigations uncovered plagiarism

in collateral areas rather than in the analysis or conclusions. Following these probes, Krendl, the Provost of Ohio University, instructed Irwin, the Dean of Russ College, to take further action. In response, Irwin asked an administrator and a retired faculty member to investigate the alleged plagiarism. These men prepared a report known as the Meyer/Bloemer Report and submitted it to Irwin and Krendl on May 30, 2006.

On May 31, 2006, Krendl held a press conference to publicize the Meyer/Bloemer Report. As the district court explained, the report found "rampant and flagrant plagiarism in theses" and "singled out three faculty members, including Dr. Gunasekera, for ignoring their ethical responsibilities and contributing to an atmosphere of negligence toward issues of academic misconduct." *Gunasekera v. Irwin*, 517 F. Supp. 2d 999, 1002 (S.D. Ohio 2007). In response to this report, the University suspended Gunasekera's Graduate Faculty status for three years and prohibited him from advising graduate students.

On August 28, 2006, Gunasekera filed this lawsuit in the United States District Court for the Southern District of Ohio. Suing under 42 U.S.C. § 1983, Gunasekera sought "compensatory and punitive damages, declaratory, equitable, and injunctive relief, and attorneys' fees and costs" from Irwin and Krendl for depriving him of his "property and/or liberty interests in violation of the Due Process Clause of the Fourteenth Amendment." Joint Appendix ("J.A.") at 1 (Compl. ¶ 1). Gunasekera made two claims: (1) that Irwin violated his due-process rights when Irwin deprived him of his property interest in his Graduate Faculty status by suspending him without "notice and a meaningful opportunity to be heard," *id.*; and (2) that Irwin and Krendl deprived him of his liberty in violation of his due-process rights when "they publicized accusations about his role in plagiarism by his graduate student advisees" without providing him with a "meaningful opportunity to clear his name." J.A. at 2 (Compl. ¶ 1).

On October 23, 2006, Irwin and Krendl filed a motion to dismiss pursuant to Rule 12(b)(6). This motion presented four possible bases for dismissal: (1) Gunasekera had waived his federal cause of action by filing a defamation suit in state court; (2) Irwin and Krendl have absolute official immunity and qualified immunity in their individual

capacities; (3) Gunasekera does not have a protected property interest; and (4) Gunasekera's liberty interest claim fails because he was "offered but rejected a name-clearing hearing." Mot. to Dismiss at 3.

On September 26, 2007, the district court granted Irwin and Krendl's motion to dismiss. The district court made four findings. The first two, which have not been raised on this appeal, are: (1) "sovereign immunity bars all but [Gunasekera's] claim for prospective equitable relief against [Irwin and Krendl] in their official capacities and [Gunasekera's] § 1983 claims for money damages against Defendants in the[ir] individual capacities, excluding back pay and fringe benefits,"; and (2) Gunasekera "did not waive his § 1983 claims against [Irwin and Krendl] by filing a defamation [suit] against the state in the Court of Claims" because the claims did not arise from the same act or omission. *Gunasekera*, 517 F. Supp. 2d at 1005-06.

The district court's third holding concerned qualified immunity. The district court determined that because Gunasekera did not have a property interest in his Graduate Faculty status, there had been no constitutional violation, and Irwin and Krendl were entitled to dismissal based on qualified immunity. The district court next held that "[e]ven assuming, arguendo, that [Gunasekera] has been deprived of a liberty interest, due process does not entitle him to a hearing beyond what [Irwin and Krendl] already offered." *Id.* at 1013. After finding that Irwin and Krendl had provided sufficient process, the district court determined that there was no constitutional violation and granted them dismissal based on qualified immunity. Having concluded that Gunasekera had no property interest in Graduate Faculty status and that he had been offered sufficient process in connection with any liberty interest, the district court also dismissed Gunasekera's remaining claims for equitable relief.

On appeal Gunasekera raises three issues: (1) the offered name-clearing hearing was insufficient to satisfy due process because it was not public; (2) he has a property interest in his Graduate Faculty status and was deprived of that interest without due process; (3) the district court erred in determining whether a constitutional violation was

clearly established for purposes of qualified immunity before a factual record had been developed.

In their response, Irwin and Krendl argue that Gunasekera was not entitled to, but was offered in any event, a public name-clearing hearing. They assert that the district court was correct in finding that Gunasekera had no property interest in his Graduate Faculty status. Finally, they state that because Gunasekera cannot establish a constitutional violation, they are entitled to qualified immunity.

## II.  ANALYSIS

### A.  Standard of Review

We review de novo a district court's grant of a motion to dismiss.[1] *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 572 (6th Cir. 2008). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. —, 127 S. Ct. 1955, 1964-65 (2007), the Supreme Court stated that in order to survive a Rule 12(b)(6) motion, the nonmoving party must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level." Weeks later, the Supreme Court cited *Twombly* in support of the well-established principle that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice

---

[1]Irwin and Krendl appended outside materials to their motion to dismiss and asked that it be converted into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d), 56. In his response, Gunasekera discussed the standards for summary judgment and for a motion to dismiss. He attached materials to his response. He also included a footnote stating that if the district court converted Irwin and Krendl's motion to dismiss into a Rule 56 motion for summary judgment, he would demand discovery under Federal Rule of Civil Procedure 56(f). The district court opinion does not mention this issue and appears to apply the Rule 12(b)(6) standard without explicitly rejecting the outside materials.

In the context of Rule 12(c)'s identical conversion language, we have held that once outside materials have been presented, the district court need not "further consider or rely upon these outside matters before the obligation to convert is triggered; the plain language of Rule 12(c) does not require these additional steps; it only requires the presentation of matters outside the pleadings and the district court's failure to exclude such matters." *Max Arnold & Sons, LLC v. W.L. Hailey & Co.*, 452 F.3d 494, 503 (6th Cir. 2006). In this case, however, we cannot convert Irwin and Krendl's Rule 12(b)(6) motion into a motion for summary judgment because Gunasekera was not afforded the opportunity to obtain discovery under Rule 56(f) as he requested. *See* J.A. at 26 (Resp. to Mot. to Dismiss at 4 n.1). Additionally, neither party appeals this issue, so the Rule 12(b)(6) standard outlined above is applicable in this case.

Because this case is before us on a Rule 12(b)(6) motion, we will not consider or discuss any of the outside materials attached by either party.

of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 550 U.S. —, 127 S. Ct. 2197, 2200 (2007) (quoting *Twombly*, 127 S. Ct. at 1964). "We read the *Twombly* and *Erickson* decisions in conjunction with one another when reviewing a district court's decision to grant a motion to dismiss for failure to state a claim." *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295-96 (6th Cir. 2008). Courts in and out of the Sixth Circuit have identified uncertainty regarding the scope of *Twombly* and have indicated that its holding is likely limited to expensive, complicated litigation like that considered in *Twombly*. *Id.* at 296 n.1 (citing cases raising this uncertainty in the Sixth and Second Circuits); *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 503 n.6 (6th Cir. 2008) ("*Twombly* itself suggests that its holding may be limited to cases likely to produce "sprawling, costly, and hugely time-consuming" litigation." (quoting *Twombly*, 127 S. Ct. at 1973 n.6)).

When we review a district court's decision to grant a Rule 12(b)(6) motion, "[w]e accept all the Plaintiffs' factual allegations as true and construe the complaint in the light most favorable to the Plaintiffs." *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005); *see also Erickson*, 127 S. Ct. at 2200 ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."). Accordingly, here we assume that the facts are as Gunasekera alleged in his complaint.

**B. Due-Process Property Claim**

To prevail on the claim that he was unconstitutionally deprived of his property when his Graduate Faculty status was suspended, Gunasekera must "'establish three elements; (1) that [he] ha[s] a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment . . . , (2) that [he] w[as] deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not afford [him] adequate procedural rights prior to depriving [him] of [his] protected interest.'" *Med Corp. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002) (quoting *Hahn v. Star Bank*, 190 F. 3d 708, 716 (6th Cir. 1999), *cert. denied*, 529 U.S. 1020 (2000)).

Gunasekera has alleged that he has a property interest in his Graduate Faculty status protected by the Due Process Clause. On appeal, Gunasekera argues that his "property interest arises from a combination of *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 463 (1989), where rules established 'specific substantive predicates to limit discretion,' with *Perry v. Sindermann*, 408 U.S. 593, 601 (1972), where 'mutually explicit understandings' created a property interest." Gunasekera Br. at 28. He alleges that Graduate Faculty status is "a right intrinsic" that a professor maintains so long as he or she satisfies the four criteria the University requires of its Graduate Faculty.[2] *Id.* He argues that because these criteria limit the University's discretion to name Graduate Faculty and because "[i]n actual practice . . . professors retain their appointment so long as they satisfy those criteria," he has a property interest in his Graduate Faculty status. *Id.*

Gunasekera suggests that, per University custom, professors enjoy Graduate Faculty status so long as they meet the four criteria. J.A. at 9-10, 13 (Compl. ¶¶ 43-46, 68). In the context of university employment, the Supreme Court has held that "rules and understandings, promulgated and fostered by state officials" can form the foundation of a protected property interest. *Perry*, 408 U.S. at 602-03. Similarly, we have held that an employer's custom and practice can form the basis for a protected property interest. *Christian v. Belcher*, 888 F.2d 410, 417 (6th Cir. 1989). The district court rejected Gunasekera's custom-based argument on the grounds that *Perry* involved university guidelines that explicitly restrained discretion, unlike the criteria for Graduate Faculty status. *See Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) ("[A] benefit is not a protected entitlement if government officials may grant or deny it in their

---

[2]As presented in Gunasekera's complaint, these criteria are:
 a.   Ph.D. in an appropriate engineering field or related area;
 b.   Group I faculty status at Ohio University;
 c.   having taught at least one year of advanced undergraduate or graduate-level courses within the five years immediately preceding nomination for appointment; and
 d.   having demonstrated currency in the nominee's field of specialization through publication of at least five technical/professional journal or refereed conference papers, textbooks, or monographs within the five years immediately preceding nomination for appointment; or having served as Principle [sic] or Co-Principle [sic] investigator on externally funded activities.
J.A. at 9 (Compl. ¶ 43). The district court stated, and Irwin and Krendl did not dispute, that Gunasekera "currently meets the criteria, as he did at the time of his suspension." *Id.*

discretion."); *see also Richardson v. Twp. of Brady*, 218 F.3d 508, 517 (6th Cir. 2000) ("[Plaintiff] can have no legitimate claim of entitlement to a discretionary decision."). However, as in *Perry*, Gunasekera's argument does not turn on the language of the regulations, but rather on his ability to show that a common practice and understanding had developed which gave him a legitimate claim to Graduate Faculty status so long as he met the stated conditions. At oral argument, the University admitted that there is no precedent regarding when Graduate Faculty status is retained, because it has never been revoked or suspended. Viewing the allegations in the complaint in the light most favorable to Gunasekera, we believe that he has alleged that University custom gives him a property interest in his Graduate Faculty status. *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. at 1968-69; *Christian*, 888 F.2d at 417 (holding that "custom and practice" could give an employee a protected property interest where there were allegations that the employer had never terminated an employee in violation of this custom).

In dismissing Gunasekera's property-interest claim, the district court asserted that any losses Gunasekera suffered were incidental to his suspension and that his suspension did not alter his employment enough to make Graduate Faculty status a property interest. The district court cited *Jackson v. City of Columbus*, 194 F.3d 737 (6th Cir. 1999), a case in which this court held that there was no deprivation of property when a city suspended its police chief with pay while it investigated allegations of misconduct. However, *Jackson* held that the police chief had not been deprived of a property interest because he "was neither terminated *nor lost any pay or benefits*." *Id.* at 749 (emphasis added). Gunasekera's complaint alleges that he lost both pay (including "a summer salary research stipend that complements annual salary" for Graduate Faculty) and benefits (such as a reduced teaching load). J.A. at 10 (Compl. ¶¶ 49-50); *see Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 310 (4th Cir. 2006) (finding an unwanted job transfer to be "a significant demotion to a position outside [plaintiff's] chosen field . . . tantamount to an outright discharge"); *Newman v. Commonwealth*, 884 F.2d 19, 25 n.6 (1st Cir. 1989) ("In this case, plaintiff was barred from voting on degrees and from serving on important university committees or as chair of her department. A letter of censure for an act of 'objective plagiarism' and 'seriously negligent scholarship' was

placed in her permanent file, an action that undoubtedly affects her ability to secure other employment in the future. *We think it obvious that this severe sanction substantially damaged plaintiff's property interest in her position*." (emphasis added)). Viewing the allegations in the complaint the light most favorable to Gunasekera, we believe that his extensive documentation of the ways in which this suspension affects his career suffices to allege that his suspension is a deprivation of property. J.A. at 10-12 (Compl. ¶¶ 47-66).

To survive this motion to dismiss, Gunasekera must also allege that Irwin and Krendl deprived him of his property interest without due process. Gunasekera asserts that he was not given notice or an opportunity to be heard regarding "his satisfaction of the criteria for appointment to Graduate Faculty status" before or after his suspension. J.A. at 8-9 (Compl. ¶¶ 38-39); *see Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 635 (6th Cir. 2005) ("Notice and *an opportunity to be heard* remain the most basic requirements of due process." (emphasis added)). At oral argument, Irwin and Krendl's lawyer conceded that Gunasekera had not been offered either a pre- or a post-deprivation hearing. "[W]e have held that prior to termination of a public employee who has a property interest in his employment, the due process clause requires that the employee be given 'oral or written notice of the charges against him or her, an explanation of the employer's evidence, and an opportunity to present his or her side of the story to the employer.'" *Farhat v. Jopke*, 370 F.3d 580, 595 (6th Cir. 2004) (quoting *Bruckner v. City of Highland Park*, 901 F.2d 491, 494 (6th Cir.), *cert. denied*, 498 U.S. 848 (1990)). Because Gunasekera asserts that he was never given any opportunity to be heard either before or after he was deprived of his property interest in his Graduate Faculty status, the district court's dismissal of Gunasekera's property-interest claim must be reversed.

## C.  Due-Process Liberty Claim

Gunasekera also appeals the dismissal of his claim that Irwin and Krendl deprived him of his liberty without due process of law. In order to prevail at the Rule 12(b)(6) stage, Gunasekera must allege that he had a protected liberty interest and that he was deprived of this interest without due process of law. The first part of this test is

not at issue, as on appeal Irwin and Krendl concede that Gunasekera "possesses a protected liberty interest."  Irwin & Krendl Br. at 4.  Given this concession, we do not need to apply our five-factor test used to decide whether someone is entitled to a name-clearing hearing due to a deprivation of his or her liberty interest.[3]  *See Quinn v. Shirey*, 293 F.3d 315, 320 (6th Cir.) (describing five factor test), *cert. denied*, 537 U.S. 1019 (2002).  The fact that Gunasekera requested a name-clearing hearing as required by this circuit is not contested.  *Id.* at 322.  The dispute boils down to what process is due and whether such a hearing must be public.[4]

We have held that "a name-clearing hearing need only provide an opportunity to clear one's name and need not comply with formal procedures to be valid." *Chilingirian v. Boris*, 882 F.2d 200, 206 (6th Cir. 1989); *see also Feterle v. Chowdhury*, 148 F. App'x 524, 531-32 (6th Cir. 2005) (unpublished opinion).  However, we have yet to address whether a name-clearing hearing must include a *public* opportunity clear one's name.[5]

To decide whether due process demands a public name-clearing opportunity, we apply the standard set by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319 (1976).  This three-part balancing test requires us to consider the following elements:

---

[3] Even if Irwin and Krendl had contested the district court's assumption that Gunasekera has a liberty interest, Gunasekera has sufficiently alleged a protected liberty interest.  The accusations regarding plagiarism were connected to his suspension (and as discussed above, Gunasekera's suspension deprived him of benefits and pay); the University alleged more than simple incompetence; the allegations were public; Gunasekera claims that the statements were false; and the University called a press conference to publicize its charges.  *See Quinn v. Shirey*, 293 F.3d 315, 320 (6th Cir. 2002).

[4] There is some dispute as to whether the hearing offered by the University was public or not.  The University asserted, and the district court agreed, that the proposed hearing was public because Gunasekera would have been allowed to bring anyone, including members of the press, to his hearing.  *Gunasekera*, 517 F. Supp. 2d at 1014 & n.9.  Gunasekera counters that the hearing offered was not public because the University specifically denied his request for a hearing publicized in the same way the Meyer/Bloemer report had been.  *Id.*  However, this dispute is contained in documents outside the pleadings which we cannot properly consider on a Rule 12(b)(6) motion.  Taking the allegations in the complaint in the light most favorable to Gunasekera, we assume that he was not offered a public opportunity to clear his name.

[5] In *Flaim*, we held that a university disciplinary hearing need not be public.  418 F.3d at 635.  Although both *Flaim* and this case involve universities, a disciplinary hearing is very different from a name-clearing hearing.  A name-clearing hearing is not a venue for an employer to determine the proper punishment, but rather an opportunity for an individual to confront a public stigma that has already been imposed by an employer.  However, as we discuss below, the concerns cited in *Flaim* may shape the nature of the publicity required in connection with a name-clearing hearing.

"(1) the nature of the private interest affected—that is, the seriousness of the charge and potential sanctions, (2) the danger of error and the benefit of additional or alternate procedures, and (3) the public or governmental burden were additional procedures mandated." *Flaim*, 418 F.3d at 635 (describing test instituted by Supreme Court in *Mathews*). Considering the first prong of this test, we believe that it is clear that where, as here, the employer has inflicted a public stigma on an employee, the only way that an employee can clear his name of the public stigma is through publicity. The injury of which Gunasekera complains is the fact that he was publicly associated with and perhaps partially blamed for a plagiarism scandal. As to the second prong of *Mathews*, publicity adds a significant benefit to the hearing, and without publicity the hearing cannot perform its name-clearing function. A name-clearing hearing with no public component would not address this harm because it would not alert members of the public who read the first report that Gunasekera challenged the allegations. Similarly, if Gunasekera's name was cleared at an unpublicized hearing, members of the public who had seen only the stories accusing him would not know that this stigma was undeserved. The Second Circuit has held that an unpublicized, internal name-clearing hearing was insufficient because of the "substantial risk that the stigma against plaintiff would remain after such hearing." *Patterson v. City of Utica*, 370 F.3d 322, 337 (2nd Cir. 2004). Following this conclusion, the Second Circuit held that: "Requiring the [employer] to address such risk by offering plaintiff the opportunity to publicly refute the charges made against him or publicising his refutations itself, does not place an undue burden upon the government's interest in terminating [employees] who either are not performing to expected standards or are behaving in an unacceptable fashion." *Id*. We agree with the Second Circuit that requiring that name-clearing hearings involve some form of publicity would not necessarily put an undue burden on the government.

In order to determine what the name-clearing hearing should entail and what its limits might be in each case, courts should again turn to the *Mathews* balancing test described above. By applying this test to the facts of the case before it, a court can tailor a name-clearing hearing which allows the employee to challenge directly any public stigma while also accounting for any legitimate concerns of the employer. In this case,

Gunasekera has a strong interest in his academic reputation. Requiring that a name-clearing hearing include a public component may be the only way to make such a hearing effective. If a name-clearing hearing has no public component, it may not be able to serve its function of curing the public stigma that necessitated the hearing. With respect to the third prong, government interests will shape the nature of the publicity required. For example, privacy concerns within the university setting might dictate the form of the publicity. *Cf. Flaim*, 418 F.3d at 637 n.2 (noting that the publicity attending a "full-dress judicial hearing" "might be detrimental to the college's educational atmosphere"). Though we have few facts before us on this Rule 12(b)(6) motion, we observe that it is possible that concerns for the privacy of students implicated in plagiarism would impact the precise nature of the publicity required.

We hold that Gunasekera has sufficiently alleged that he was deprived of a protected liberty interest without due process of law to withstand this Rule 12(b)(6) motion. In order to satisfy due process, the university is required to offer Gunasekera a name-clearing hearing that is adequately publicized to address the stigma the university inflicted on him. The exact nature of that publicity depends on a fact-intensive review of the circumstances attending his case, and we leave to the district court the initial determination regarding the exact parameters of the name-clearing hearing due to Gunasekera.

## D. Qualified Immunity

Qualified immunity is an affirmative defense that will protect a state official sued in his individual capacity from damages liability when two questions have been answered: (1) "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"; and (2) if the answer to the first question is yes, we must decide whether the violated right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001).

Taking the allegations contained in the complaint in the light most favorable to Gunasekera, we conclude that Irwin and Krendl would not be shielded by qualified immunity. Gunasekera, a long-time faculty member, alleges that he had his important

Graduate Faculty status revoked, an action that Gunasekera asserts the University had not taken before, without any pre- or post-termination notice and opportunity to be heard. J.A. at 8-10 (Compl. ¶¶ 38-39, 46). The revocation of this status deprived him of pay and benefits, also without notice and opportunity to be heard. These basic due-process requirements are clearly established, and Irwin and Krendl reasonably should have known that Gunasekera was due at least some process in connection with his suspension. *See, e.g.*, *Flaim*, 418 F.3d at 635 ("Notice and an opportunity to be heard remain the most basic requirements of due process."). Because Gunasekera received no process, Irwin and Krendl are not protected by qualified immunity at this phase of the proceedings.

Taking the allegations in the complaint in the light most favorable to Gunasekera, we conclude that qualified immunity does shield Irwin and Krendl from damages based on Gunasekera's liberty-interest claim. Our holding that a name-clearing hearing may require publicity in some circumstances was not clearly established law at the time that Irwin and Krendl acted. However, because qualified immunity does not bar injunctive relief, Gunasekera may proceed with respect to his request for a public name-clearing hearing as indicated above.

## III. CONCLUSION

For the reasons discussed above, because Gunasekera has sufficiently alleged a property interest in his Graduate Faculty status which was deprived without due process of law, we **REVERSE** the district court's judgment granting the dismissal of Gunasekera's property-based claims. We **REVERSE** the district court's judgment that Gunasekera was not entitled to a public name-clearing hearing and **REMAND** for further proceedings consistent with this opinion. We **AFFIRM** the district court's judgment granting the dismissal of Gunasekera's liberty-based claims seeking civil damages because we conclude that Irwin and Krendl have qualified immunity with respect to these liberty-based damages claims.