**Teresa L. O'MALLEY, Plaintiff,**

v.

**NAPHCARE, INC., Defendant.**

**Case No. 3:12–cv–326.**

United States District Court,
S.D. Ohio,
Western Division.

Signed Nov. 17, 2014.

---

Dennis Michael Moskal, Law Offices of Dennis M. Moskal, LLC, Adam Grant Anderson, Pittsburgh, PA, for Plaintiff.

Caroline M. Dimauro, Jamie Marie Goetz–Anderson, Jackson Lewis LLP, Cincinnati, OH, for Defendant.

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART THE PARTIAL MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT FILED BY DEFENDANT NAPHCARE, INC. (DOC. # 42); ADOPTING THE REPORT AND RECOMMENDATIONS OF THE MAGISTRATE JUDGE (DOC. # 52); OVERRULING THE DEFENDANTS' OBJECTIONS (DOC. # 53) TO SAID JUDICIAL FILING; AND DISMISSING WITH PREJUDICE THE FIRST AMENDMENT RETALIATION CLAIM UNDER 42 U.S.C. § 1983, COUNT FOUR OF THE THIRD AMENDED COMPLAINT (DOC. # 41)

WALTER H. RICE, District Judge.

Plaintiff Teresa L. O'Malley ("O'Malley" or "Plaintiff") brings this action against her former employer, Defendant Naph-

Care, Inc. ("NaphCare" or "Defendant"). Her Third Amended Complaint (Doc. # 41) alleges discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623 (Count One), state common law claims for defamation (Count Two) and wrongful discharge in violation of public policy (Count Three), and a First Amendment retaliation claim arising under 42 U.S.C. § 1983 (Count Four). The Court has federal question jurisdiction, pursuant to 28 U.S.C. § 1331, over the federal claims, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.[1]

Pending before the Court are NaphCare's Partial Motion to Dismiss Plaintiff's Third Amended Complaint (Doc. # 42), which moves for dismissal of O'Malley's common law claim for defamation (Count Two) and her claim of First Amendment Retaliation arising under 42 U.S.C. § 1983 (Count Four). Also pending before the Court are the Report and Recommendation of the United States Magistrate Judge (Doc. # 52), which recommends dismissing O'Malley's First Amendment retaliation claim and overruling NaphCare's motion with regards to the defamation claim, and NaphCare's Objections (Doc. # 53) to the Report and Recommendations.

As a preliminary matter, O'Malley's Response to NaphCare's Partial Motion to Dismiss states that she has "dropped" her First Amendment retaliation claim under 42 U.S.C. § 1983. Doc. # 44 at 1 n. 1. Accordingly, Naphcare's Partial Motion to Dismiss is SUSTAINED with regards to Count Four of O'Malley's Third Amended Complaint, which is DISMISSED WITH PREJUDICE.

The Magistrate Judge recommends overruling NaphCare's motion with regards to O'Malley's defamation claim, Count Two of the Third Amendment Complaint. NaphCare's Partial Motion to Dismiss states three arguments in support of dismissing O'Malley's defamation claim. Doc. # 42. The Court will consider each argument in turn, at the same time addressing the recommendations of the Magistrate Judge and NaphCare's objections thereto.

■ First, NaphCare invokes the one-year statute of limitations under Ohio Rev. Code § 2305.11(A) that applies to defamation claims. Doc. # 42 at 5. According to NaphCare, because O'Malley filed suit on October 4, 2012, the statute precludes any statement made before October 4, 2011, from forming the basis for her defamation claim. *Id.*

The Magistrate Judge rejects NaphCare's statute of limitations argument, finding that O'Malley's claim accrued on October 4, 2011, the date on the discharge summary that contains the allegedly defamatory statement. Doc. # 52 at 7. NaphCare makes no objection to the Magistrate Judge's analysis of the limitations issue. The Court agrees with the Magistrate Judge, and notes that O'Malley explicitly identifies the October 4, 2011, discharge summary as the first instance of publication of the allegedly false accusation that she was responsible for missing narcotics at the Montgomery County Jail. Doc. # 41 at 17–18. Accordingly, O'Malley's defamation claim will not be dismissed on statute of limitations grounds.

■ Second, NaphCare argues that O'Malley failed to plead a legally sufficient defamation claim because it fails to identi-

1. O'Malley alleges subject matter jurisdiction on the basis of diversity of citizenship under 28 U.S.C. § 1332, but her ADEA and § 1983 claims support original jurisdiction, and, by extension, supplemental jurisdiction over her common law claims. The Third Amended Complaint alleges few, if any, facts that demonstrate the amount in controversy requirement of 28 U.S.C. § 1332(a).

fy "a single defamatory statement upon which her claim may be based." Doc. # 42 at 5. NaphCare quotes a number of sentences and paragraphs from the Third Amended Complaint to support this assertion. *Id.* at 6–7. The Magistrate Judge disagrees, finding that O'Malley has sufficiently described a defamatory statement with the allegedly false statement in the discharge summary that narcotics were missing while she supervised the medication cart, and facts alleging that the narcotics were never actually missing. Doc. # 52 at 7.

NaphCare objects to the Magistrate Judge's analysis, arguing that the language of the discharge summary does not contain a false or defamatory statement about O'Malley:

> Based on the actual language of this disciplinary document, however, Plaintiff has not identified a potentially defamatory statement **about her** upon which her claim may be based. This is critical. The statement in the document indicating that a pharmacist had discovered a "missing narcotic pill" is not defamatory **about Plaintiff.**

Doc. # 53 at 6 (emphasis in original). In support of this argument, NaphCare quotes (with emphasis) the following language from the discharge summary, which O'Malley attached to the Third Amended Complaint:

> Today September 30th Nurse Teresa was the appointed charge nurse during 7a–3p shift and was responsible for the Narcotic Count. *Pharmacist Mary visited our facility earlier today and discovered 1 tab of Ativan 1mg missing from one of the blistered cards which will be reported to the appropriate authorities. DON Gary Blair and I spoke with Nurse Teresa about the missing*

*narcotic pill* and she admitted she does not check that the narcotic cards are checked for tempered evidence individually. After discussion with Nurse Teresa, reportedly she proceeded to throw the charge nurse key set onto another nurse['s] med cart and left the building [ ] without ensuring narcs were counted and keys were properly passed on to oncoming shift.

Doc. # 41–2 at 1.

▮ On the original discharge summary, the paragraph above is captioned "Description and Date of Alleged Misconduct," the recommended discipline is "discharge," and the next page contains the approval of the discharge by NaphCare's legal department. *Id.* at 1–2. NaphCare's assertion that the statement in question is not "about" O'Malley, or that it does not qualify as being "of or concerning" her for purposes of a defamation claim, is not well taken. NaphCare's exacting standard would apparently not be satisfied by anything less than the bald assertion that "O'Malley stole the narcotics." The discharge summary, however, clearly states that she was responsible for the narcotics at the time they went missing. It blames her for their alleged disappearance and fires her for the same reason. The argument that the statement in question is not "about her," with sufficient specificity required to state a defamation claim, is simply untenable. O'Malley alleges that the statement is "filled with lies," and states that every factual contention of the discharge statement was untrue. Doc. # 41 at 18. If, as she alleges, she was not responsible for the missing narcotics, and NaphCare published the statement that she was responsible for them to others, O'Malley has plausibly stated the first element of a defamation claim.[2]

---

**2.** The elements of a defamation claim are: "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the

NaphCare also objects to the Magistrate Judge's conclusion that O'Malley's defamation claim sufficiently alleges an unprivileged publication to a third party. According to the Magistrate Judge, it is reasonable to infer that NaphCare had communicated the information from the discharge statement to the counselor who denied O'Malley's education loan, based on her allegation that the counselor used the missing narcotics from her previous employer as a justification for the denial. Doc. # 52 at 7–8. NaphCare objects that this was not a reasonable inference for the Magistrate Judge to make because it was based only on a suspicion that the counselor had received the information from NaphCare. Doc. # 53 at 8. According to NaphCare, the allegations in the Third Amended Complaint make it equally plausible that the counselor received such information from a source other than NaphCare, as O'Malley admits discussing her termination with others. *Id.* at 9.

Regardless of whether the Third Amended Complaint made it equally plausible to infer that someone other than NaphCare was the source of that information, when ruling on a motion to dismiss, this Court must liberally construe the allegations in O'Malley's favor. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir.1995). It was not unreasonable for the Magistrate Judge to infer that NaphCare was the source of the information that led to the loan refusal. The language of the Third Amended Complaint states that O'Malley was "turned down because of 'unresolved issues with former employer.' The counselor who turned her down specifically mentioned the 'missing narcotics' charge." Doc. # 41 at 20. Based on this allegation, it is plausible to infer that NaphCare was the source of

the information. O'Malley also expressly alleges that Karina Carlisle, NaphCare's Health Services Administrator, "discuss[ed] the termination of Plaintiff for 'missing narcotics'" with a nurse weeks after the termination. *Id.* at 19. The plausible inference of publication identified by the Magistrate Judge and the allegation that Carlisle continued to attribute the missing narcotics to O'Malley sufficiently allege publication of the defamatory statement upon which she bases her claim. Accordingly, NaphCare's objection to the Magistrate Judge's conclusion that O'Malley failed to adequately plead her defamation claim is overruled.

NaphCare's final argument in support of dismissal of the defamation claim asserts that O'Malley is precluded from asserting a defamation claim because she informed a jail employee that she had been discharged for "missing narcotics" when she exited the jail after her termination. The Magistrate Judge rejects this argument because "NaphCare cites no authority for the proposition that O'Malley's voluntary communication to Captain Roy precludes the entirety of her defamation claim ... as a matter of law." Doc. # 52 at 8. NaphCare has not objected to this analysis. The Court rejects the argument that this allegation is a basis for finding that her defamation claim is insufficient as a matter of law. The allegation occurs in a description of her interactions with jail officers as she left the premises after being terminated. It does not describe the type of affirmative publication by a plaintiff that would preclude a viable defamation claim. *See, e.g., Kem-*

statement irrespective of special harm or the existence of special harm caused by the publication." *Harris v. Bornhorst,* 513 F.3d 503, 522 (6th Cir.2008) (quoting *Akron–Canton*

*Waste Oil, Inc. v. Safety–Kleen Oil Serv., Inc.,* 81 Ohio App.3d 591, 611 N.E.2d 955, 962 (1992)).

*per v. Am. Broad. Co.*, 365 F.Supp. 1275, 1276 (1973) (granting summary judgment where plaintiff "himself expressed his desire for release" of allegedly defamatory statements and "approved of the release" to the press). Nor does the allegation suggest that she conceded that Naph-Care's stated reason for terminating her was the truth. *See, e.g., Iwenofu v. St. Luke Sch.*, 132 Ohio App.3d 119, 724 N.E.2d 511 (1999) (upholding grant of summary judgment against plaintiff who "himself admitted that he touched the female students in the manner the school described in its statements" that formed the basis for his defamation claim). Under NaphCare's argument, no plaintiff who repeats a defendant's false statement to another could then sue the defendant for defamation. For these reasons, the Court rejects the argument that O'Malley's statement to Captain Roy requires the dismissal of her defamation claim.

For the reasons set forth above, the Court ADOPTS the Report and Recommendation of the United States Magistrate Judge (Doc. # 52) and OVERRULES Naphcare's Objections (Doc. # 53) to said judicial filing.

Defendant Naphcare's Partial Motion to Dismiss Plaintiff's Third Amended Complaint (Doc. # 42) is SUSTAINED IN PART and OVERRULED IN PART. The motion is SUSTAINED with regards to Count Four of the Third Amended Complaint, the First Amendment retaliation claim under 42 U.S.C. § 1983, which is DISMISSED WITH PREJUDICE. The motion is OVERRULED with regards to Count Two, the common law claim for defamation.

**REPORT AND RECOMMENDATION** [1] **THAT: (1) DEFENDANT NAPH-CARE'S MOTION TO DISMISS (DOC. 42) BE DENIED AS TO PLAINTIFF'S DEFAMATION CLAIM; AND (2) PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM BE DISMISSED**

MICHAEL J. NEWMAN, United States Magistrate Judge.

This case is before the Court on Defendant NaphCare, Inc.'s ("NaphCare") partial motion to dismiss the third amended complaint. Doc. 42. In the motion, premised on Fed.R.Civ.P. 12(b)(6), NaphCare seeks dismissal of Plaintiff Teresa Lynn O'Malley's ("O'Malley") defamation and First Amendment retaliation claims. O'Malley filed a memorandum in opposition to NaphCare's motion. Doc. 44. NaphCare filed a reply memorandum. Doc. 46. The Court has carefully considered each of these documents, and Naph-Care's motion to dismiss is now ripe for decision.

**I.**

For purposes of this motion to dismiss, the Court must: (1) view the Complaint in the light most favorable to Plaintiff, and (2) take all well-pleaded factual allegations as true. *Tackett v. M & G Polymers*, 561 F.3d 478, 488 (6th Cir.2009); *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir.2009).

As pled in the third amended complaint, NaphCare is a correctional healthcare provider providing such services at the Montgomery County Jail. Doc. 41 at PageID 350. O'Malley, a forty-eight year old Licensed Practical Nurse, worked for Naph-Care from 2007 through 2011 at the Montgomery County Jail. *Id.* O'Malley, in her

---

**1.** Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

third amended complaint, details a strained working relationship with certain superiors beginning in July 2011. *Id.* at PageID 351–57. During that month, Jeff McIntyre, one of O'Malley's supervisors, asked her to address a bed bug issue at the Montgomery County Jail. *Id.* at PageID 351–52. With McIntyre's permission, O'Malley contacted the Montgomery County Combined Health District ("Health District") for directions to address the issue. *Id.* at PageID 352. O'Malley purportedly implemented the directions provided by the Health District and, subsequently, the Health District arrived at the facility to perform a follow-up inspection. *Id.* at PageID 352–53. Ultimately, the Health District directed NaphCare to create a policy to manage parasites at the jail (including bed bugs) and O'Malley began hearing comments from superiors blaming her for the cost and time demands required to produce the policy. *Id.* at PageID 353.

Around this same time, O'Malley also began voicing concerns regarding a number of issues at NaphCare, including staffing shortages, the absence of an Electronic Medical Records System,[2] not providing inhalers for inmates with asthma or other conditions, and not timely performing substance abuse withdrawal protocol assessments for incoming detainees. *Id.* at PageID 354. Based on all of the foregoing conduct, O'Malley contends that her superiors devised a scheme to terminate her employment. *Id.* at PageID 357.

On September 29, 2011, while preparing the medication cart at the beginning of her shift, O'Malley found eight ounces of "loose medications" and "medications that were not stored properly." *Id.* at PageID 355–56. After ensuring that the medications were arranged in compliance with controlling legal standards, O'Malley reported the irregularities. *Id.* at PageID 356. After making the report, supervisors Gary Blair—NaphCare's Director of Nursing—and Karina Carlisle—NaphCare's Health Services Administrator—approached O'Malley and demanded that they be permitted to inspect the cart. *Id.*

The next day, O'Malley worked the morning shift as the "Charge Nurse"—meaning she had "the dut[ies] of reconciling [n]arcotics at shift change and .... assist[ing] with [the] distribution of any medications needed by the nurses" from NaphCare's in-house pharmacy. *Id.* at PageID 357. That same day, a pharmacist contracted by NaphCare performed "a 'mock' survey." *Id.* This mock survey included a review concerning "custody of pharmacy keys, drug counts, and storage and handling of narcotics and other medications." *Id.* Twice during the survey, Carlisle requested and then returned O'Malley's keys. *Id.* The pharmacist, known only as "Mary," finished the survey and left by 1:00 p.m., and never approached O'Malley about any missing narcotics. *Id.* at PageID 357–58. An hour later, however, Carlisle and Blair informed O'Malley that they were sending a report of missing narcotics to NaphCare's corporate office based on Mary's report. *Id.* Upset, O'Malley asked permission to leave for a short time and, on her way out of the facility, she tossed the cart keys to another nurse. *Id.*

O'Malley continued work as a Charge Nurse for four additional shifts in the following days, but was ultimately terminated

---

2. The Ohio State Board of Nursing ("OSBN") and the Ohio State Board of Pharmacy ("OSBP") were examining the licensing of NaphCare's electronic medical records systems and its handling of medications. Doc. 41 at PageID 351. As a result, NaphCare was "in the process of making changes to meet the standards and requirements" of those organizations. *Id.*

on October 5, 2011. *Id.* A "discharge summary" prepared by NaphCare states that O'Malley was the nurse in charge of the narcotic count at the time narcotics were missing. Doc. 41–2 at PageID 377. O'Malley now brings suit against NaphCare alleging the following four claims: (1) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"); (2) defamation under Ohio law; (3) wrongful discharge in violation of Ohio public policy; and (4) First Amendment retaliation. Doc. 41 at PageID 364–73. NaphCare now moves to partially dismiss the third amended complaint.

## II.

A motion to dismiss filed pursuant to Fed.R.Civ.P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal for "failure to state a claim upon which relief can be granted." To show grounds for relief, Fed.R.Civ.P. 8(a)(2) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While Fed.R.Civ.P. 8 "does not require 'detailed factual allegations,' ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Pleadings offering mere " 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). In determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

In order "[t] o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. In addition to well-pleaded allegations in the complaint, the Court may also consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint[.]" *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir.2001) (citation omitted). A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679, 129 S.Ct. 1937 (citing Fed.R.Civ.P. 8(a)(2)).

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) asserts that the court lacks subject matter jurisdiction. Such a motion may consist of a "facial attack," under which the moving party asserts that the allegations of the complaint are not sufficient to establish jurisdiction. *O'Bryan v. Holy See*, 556 F.3d 361, 376–77 (6th Cir.2009). Under a facial attack, conclusory allegations or legal conclusions masquerading as factual conclusions will not prevent dismissal. *Id.* at 377.

## III.

NaphCare, as noted above, moves to dismiss O'Malley's claims of defamation and First Amendment retaliation, not her ADEA or state law wrongful discharge claims. Doc. 42 at PageID 379. In re-

sponse, O'Malley voluntarily abandons her First Amendment retaliation claim. Doc. 44 at PageID 397 n. 1. Accordingly, the undersigned only addresses the merits of NaphCare's motion as it relates to O'Malley's defamation claim and recommends that her First Amendment retaliation claim be dismissed as abandoned. See O'Bryan v. Holy See, 556 F.3d 361, 388 n. 14 (6th Cir.2009).

▮ With regard to the defamation claim, both parties support their arguments by citing Ohio law. Doc. 42 at PageID 383; Doc. 44 at PageID 399–403. Under Ohio law, "defamation occurs when a publication contains a false statement 'made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in her trade, business or profession.'" Jackson v. Columbus, 117 Ohio St.3d 328, 883 N.E.2d 1060, 1064 (Ohio 2008) (citation omitted). The manner of "publication" distinguishes slander, which refers to spoken defamatory statements, from libel, which refers to written or printed defamatory statements. Lawson v. AK Steel Corp., 121 Ohio App.3d 251, 699 N.E.2d 951, 954 (Ohio Ct.App.1997).

To prevail on a defamation claim, plaintiff must show: "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting to at least negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." Harris v. Bornhorst, 513 F.3d 503, 522 (6th Cir. 2008) (quoting Akron–Canton Waste Oil, Inc. v. Safety–Kleen Oil Serv., Inc., 81

Ohio App.3d 591, 611 N.E.2d 955, 962 (Ohio Ct.App.1992)). Here, in moving to dismiss the defamation claim, NaphCare presents three arguments: (1) that the claim is time-barred by the statute of limitations; (2) O'Malley fails to identify a defamatory statement or identify to whom such statement was made; and (3) the claim is barred as a result of O'Malley having volunteered the same information to a third party. Doc. 42 at PageID 383–92.

## A.

▮ NaphCare first argues that O'Malley's defamation claim is barred by the applicable statute of limitations. Doc. 42 at PageID 379. Under Ohio law, a defamation claim must be filed "within one year after the cause of action accrued." Ohio Rev.Code § 2305.11(A). For a libel claim, the cause of action begins to accrue upon the first publication of the defamatory statement. T.S. v. Plain Dealer, 194 Ohio App.3d 30, 954 N.E.2d 213, 214 (Ohio Ct.App.2011). For a slander claim, the action accrues "at the time the words are spoken." Foster v. Wells Fargo Fin. Ohio, Inc., 195 Ohio App.3d 497, 960 N.E.2d 1022, 1026 (Ohio Ct.App.2011). Here, O'Malley initiated this suit by moving for leave to proceed in forma pauperis on October 4, 2012.[3] See Doc. 1. The discharge summary containing the allegedly defamatory statement is dated October 4, 2011. Doc. 41–2 at PageID 378. Accordingly, there is no merit to NaphCare's contention that O'Malley's defamation claims are time-barred by the applicable one year statute of limitations.

---

**3.** O'Malley filed a motion for leave to proceed in forma pauperis on October 4, 2012. Doc. 1. Such date is the applicable date of filing for statute of limitations purposes. See Powell v. Jacor Commc'ns Corporate, 320 F.3d 599, 603 (6th Cir.2003); Truitt v. Cnty. of Wayne, 148 F.3d 644, 648 (6th Cir.1998).

752

## B.

Naphcare next contends that O'Malley fails to sufficiently plead defamation by omitting allegations of specific defamatory statements or identify to whom such statements were published. Doc. 42 at PageID 380. However, the discharge summary includes an allegedly false statement that narcotics were "missing" during O'Malley's charge of the cart. Doc. 41–2 at PageID 377. O'Malley also alleges facts supporting the assertion that the narcotics were never actually "missing." Doc. 41 at PageID 361–62. Based on these allegations, the undersigned concludes that O'Malley sufficiently pleads existence of a defamatory statement. *See Schoedler v. Motometer Gauge & Equip. Corp.*, 134 Ohio St. 78, 15 N.E.2d 958, 961 (Ohio 1938); *Straus v. Doe*, No. 2003–L–082, 2004 WL 2803254, at *4 n. 4 (Ohio Ct.App. Sept. 30, 2004).

With regard to communication of such statement to a third-party, O'Malley alleges that she was denied funding for education under the Workplace Investment Act ("WIA") "because of 'unresolved issues with her former employer over missing narcotics.' " Doc. 41 at PageID 364. O'Malley alleges that a counselor specifically mentioned the missing narcotics when informing her that she would not receive WIA funding. *Id.* at 364, 369.

The Court can reasonably infer from this allegation—accepted, for purposes of this motion, as true—that NaphCare communicated the information from O'Malley's discharge summary to the counselor. Based upon these allegations, the undersigned concludes that O'Malley sufficiently "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. Accordingly, the undersigned finds no merit to NaphCare's contentions in this regard.[4]

## C.

Finally, NaphCare argues that O'Malley's own conduct precludes her claim of defamation in its entirety. In her third amended complaint, O'Malley alleges that, upon exiting NaphCare's facility following her termination, she saw "Captain Roy"[5] near the parking lot and "informed [him] that she was discharged for 'missing narcotics[.]' " Doc. 41 at PageID 364. NaphCare cites no authority for the proposition that O'Malley's voluntary communication to Captain Roy precludes the entirety of her defamation claim—such as damages arising from the allegedly defamatory statement contained in the discharge summary—as a matter of law. "[I]ssues ad-

4. O'Malley also alleges that, "[i]n every application or interview ... [she] is forced to address the false reason she was fired[.]" Doc. 41 at PageID 369. Based on this allegation, it appears that O'Malley also seeks to prove publication on a "compelled self-publication" or "forced publication" theory. "The forced republication doctrine 'provides for proof of publication where a defamed person is forced to republish defamatory statements to a third party, such as a person who is required to state the reason for leaving his or her former employer when completing an application for employment.' " *Golem v. Vill. of Put–In Bay*, 222 F.Supp.2d 924, 935 (N.D.Ohio 2002) (citations omitted). It is not clear whether Ohio courts have "embraced the idea that an al-

leged victim of defamation can satisfy the publication element of the tort by publishing it himself, *i.e.*, to prospective employers." *Guy v. McCartney*, No. 00JE7, 2002 WL 1376235, at *6 (Ohio Ct.App. June 3, 2002); *see also Atkinson v. Stop–N–Go Foods, Inc.*, 83 Ohio App.3d 132, 614 N.E.2d 784, 786 (Ohio Ct.App.1992). Because NaphCare presents no challenge to the allegations in this regard, the undersigned makes no finding at this time as to whether O'Malley may proceed on this theory.

5. The third amended complaint provides no further information regarding Captain Roy, such as his full name or his employer.

verted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey,* 125 F.3d 989, 995–96 (6th Cir.1997). Finding that NaphCare fails to fully develop its argument concerning this contention, the undersigned finds such argument waived for purposes of this motion to dismiss.

## IV.

Accordingly, the undersigned **RECOMMENDS** that Defendant NaphCare's motion to dismiss (doc. 42) be **DENIED** as to O'Malley's defamation claim. In addition, because O'Malley abandons her First Amendment retaliation claim, the undersigned recommends that such claim be **DISMISSED.**

Filed Oct. 23, 2014.